MANFRED P. MUECKE (222893)
mmueke@bffb.com
BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone: (619) 756-7748
Fax: (602) 274-1199

VAN BUNCH
(*To be Admitted Pro Hac Vice*)
vbunch@bffb.com
T. BRENT JORDAN
(*To be Admitted Pro Hac Vice*)
bjordan@bffb.com
BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.
2325 E. Camelback Road, #300
Phoenix, AZ 85016
Telephone:  (602) 274-1100
Fax:  (602) 274-1199

Attorneys for Plaintiff

DEBRA BREWER HAYES
(*To be Admitted Pro Hac Vice*)
dhayes@dhayeslaw.com
CHARLES CLINTON HUNTER
(CA Bar No. 93987)
chunter@rbfirm.net
REICH & BINSTOCK, LLC
4265 San Felipe, Suite 1000
Houston, TX  77027
Telephone: (713) 622-7271
Fax: (713) 623-8724

STEPHEN M. HANSEN
(*To be Admitted Pro Hac Vice*)
LAW OFFICES OF STEPHEN M. HANSEN
1821 Dock St., Unit 103
Tacoma, WA  98402
Telephone: (253) 302-5955

FILED
CLERK, U.S. DISTRICT COURT

JUL 1 5 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

GEORGE WILLIAMS, on behalf of himself and all others similarly situated,

      **Plaintiff,**

v.

YAMAHA MOTOR CO., LTD. and YAMAHA MOTOR CORPORATION, U.S.A.,

      **Defendants.**

Case No.: CV13- 5066 BRO(VBKx)

**CLASS ACTION COMPLAINT FOR:**

1.   VIOLATIONS OF MAGNUSON-MOSS FEDERAL WARRANTY ACT 15 U.S.C. §2301, et seq.
2.   BREACH OF STATE EXPRESS WARRANTIES
3.   BREACH OF STATE IMPLIED WARRANTIES
4.   VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT Civil Code § 1750, *et seq.* ; and
5.   VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*

**DEMAND FOR JURY TRIAL**

- 1 -

Plaintiff George Williams, on behalf of himself and all others similarly situated, by his undersigned attorneys, allege as follows:

1.      This is a class action brought by Plaintiff, on behalf of himself and other similarly situated persons, against Yamaha Motor Co., Ltd. ("YMC") and Yamaha Motor Corporation, U.S.A. ("YMUS") (collectively "Defendants" or "Yamaha").  Plaintiff seeks equitable remedies for himself and the Class (defined in ¶67, below).

2.      As described below, an inherent design and/or manufacturing defect in Defendants' Yamaha four stroke outboard motors – specifically, first-generation (2000 to 2004 model year) four stroke F-Series outboards ("First Generation Four Stroke Outboards") caused an almost immediate onset of corrosion to internal component parts, which gradually worsened.  The corrosion buildup forced owners such as Plaintiff to undergo significant repair or replacement of the internal corroded parts typically after 500 to 700 hours of use, even if the engines were properly serviced and maintained.  As a result, the First Generation Four Stroke Outboards are rendered unfit for their intended use and purpose.

3.      Because of the inherent defect in design and/or manufacture of Yamaha's First Generation Four Stroke Outboards, buildup of corrosion would begin to occur right away, although due to the concealed placement of the internal component parts experiencing corrosion, Plaintiff and other similarly situated

owners could not have seen or performed a visual inspection that would have revealed the defect prior to the advancement of the corrosion to the stage where performance related symptoms have surfaced.

4.     Further, based on inherent defects in the design and/or manufacture of the First Generation Four Stroke Outboards, Defendants knew or should have known that their warranties, issued by Defendant YMUS, were being breached due to an almost immediate onset and buildup of corrosion to internal component parts, and further, Defendants knew or should have known that in order to keep the outboards in use after the warranty period, Plaintiff and the Class would be forced to replace the internal corroded parts and thereby incur not just the cost of the replacement parts, but also significant labor costs.   Defendants concealed these facts from Class members, including Plaintiff.   Further, Defendants also failed to warn consumers such as Plaintiff of the potential danger and safety risk of a sudden and catastrophic engine failure brought on by the buildup of corrosion in the defective engines.

5.     Defendants' failure to disclose this defect about which it knew or should have known constitutes both an actionable misrepresentation and an unfair, unlawful, fraudulent, and deceptive business practice.

6.     Plaintiff and other Class members were misled into purchasing outboard motors of a quality and value different than they were promised.

7.     To date, Defendants and their agents have been unable or unwilling to fully repair and/or offer replacement parts or replacement of the defective outboard motors.

8.     As a result of Defendants' practices, Plaintiff and the other Class members have suffered injury in fact.

9.     Plaintiff therefore brings this action on behalf of himself and a proposed Class of similarly situated purchasers of Yamaha's First Generation Four Stroke Outboards.

## **JURISDICTION AND VENUE**

10.     Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §1332 because the proposed Class consists of 100 or more members and the aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of costs and interest.   Additionally, at least one Class member is a citizen of a State different than Defendants.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391 inasmuch as the unlawful practices are alleged to have been committed in this District, and Defendant Yamaha Motor Corporation, U.S.A. has its principal place of business in this District, and Defendants regularly conduct business in this District.

/ / /

/ / /

/ / /

## PARTIES

12.     During all times relevant to this suit, Plaintiff, George Williams, has been a resident of the State of Washington, and currently resides in Seattle, Washington.

13.     Defendant Yamaha Motor Co., Ltd. ("YMC") is a Japanese corporation whose principal place of business is in Shizuoka, Japan, which has at all times material hereto transacted substantial business within the United States and within the State of California.

14.     Defendant Yamaha Motor Corporation, U.S.A. ("YMUS") operates as a wholly-owned subsidiary of Defendant YMC for the importing and marketing of Yamaha Motor products.  YMUS is a corporation organized and existing under the laws of the State of California and has its principal place of business at 6555 Katella Avenue, Cypress, California 90630.

15.     Defendants, and each of them, were the agents or employees of each other and were acting at all times within the course and scope of such agency and employment and contributed to and caused the breaches and other liabilities as alleged herein, and are legally responsible because of their relationship with their co-Defendants for the relief and recovery sought by Plaintiff and the members of the Class.

16.     Defendants, and each of them, were the manufacturers, designers, developers, processors, producers, assemblers, builders, testers, inspectors,

wholesalers, retailers, sellers and distributors of the First Generation Four Stroke Outboards.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

17.     Plaintiff and the members of the Class could not have discovered through the exercise of reasonable diligence that their First Generation Four Stroke Outboards were defective within the time period of any applicable statute of limitations.  Among other things, due to the concealed placement of the internal parts experiencing corrosion, Plaintiff did not and could not have performed a visual inspection that would have revealed the defect, nor is it reasonable to presume that any member of the Class could have performed such a visual inspection.

18.     Any applicable statute of limitations that might otherwise apply to bar any of Plaintiff's claims or the class of the other Class members is tolled by Defendants' concealment of its defective design and/or manufacture of the First Generation Four Stroke Outboards.  As a result of Defendants' concealment, neither Plaintiff nor the other Class members could have discovered the defects, even upon exercise of  reasonable  diligence, until such time as the repairs and/or replacement of component parts was necessary, or until such time as the engines suffered failure due to the corrosion of internal component parts.

/ / /

/ / /

**FACTS**

19.     At all relevant times herein, Defendants have developed, manufactured, marketed, sold and distributed outboard motors under the Yamaha brand name throughout the United States through YMUS's central offices in Cypress, California.

20.     Beginning as early as with models introduced on or around the year 2000, Defendants have marketed, sold and distributed First Generation Four Stroke Outboards to purchasers in the United States through central offices of YMUS located in California.

21.     On information and belief, Defendants phased out the First Generation Four Stroke Outboards with the introduction of next generation models on or around 2005.

22.     All First Generation Four Stroke Outboards were sold with a three-year warranty from Defendant YMUS with identical or nearly identical operative language.    The three-year warranties issued by YMUS guaranteed that the outboard motors would be "free from defects in material and workmanship" for the duration of the warranty, and covered the costs of parts and labor for major components for the full term of the warranty.

23.     The First Generation Four Stroke Outboards have latent defects that are inherent within the motors themselves and/or the result of design or manufacturing flaws which result in an almost immediate onset of corrosion to

internal dry exhaust component parts during the warranty period, which gradually worsened.

24.     The component parts affected by the defect are found on the "dry" side of the exhaust cavities of the outboard engines, which is not exposed directly to water.  This area, the "dry" side, is separate from where water passages exist by design to allow water through to reduce heat and keep the engine cool.

25.     Proper maintenance, servicing and storage during the warranty period, however, would not detect the internal dry side exhaust corrosion problem.  On information and belief, authorized Yamaha dealers and/or repair technicians performing servicing of the First Generation Four Stroke Outboards in accordance with Yamaha service manual guidelines, were not told to inspect for corrosion in internal dry exhaust components during annual maintenance checks, as might allow for the corrosion problems to be identified while the outboards were still covered under the stated terms of the written warranty.

26.     Thus, the hidden buildup of corrosion would not be discovered, even by trained mechanics performing annual service checks, until the engines actually begin to evidence symptoms such as leaking oil, giving the mechanic a reason to open up the engine and expose the corrosion.

27.     As a number of affected owners have reported, an external examination and even scoping of the exhaust tubes cannot detect the internal corrosion, severe as it is.  Absent disassembly of the engine and removal of the

power heads, the internal corrosion to the exhaust components cannot be visually detected.

28.     Instead, it is not until after approximately 500 to 700 hours of use, that the outward signs and tell-tale symptoms became so manifest that the corrosion issue with hidden internal parts was flagged and where repairs and/or replacement of component parts therefore became necessary.  This was typically beyond the durational limitation of the three year written warranty, since most recreational boat owners use their outboard motors less than 100 hours per year.

29.     YMUS' limits on its express warranty are unenforceable as Defendants, acting in unison and as agents of one another, knowingly sold and distributed a defective product without conspicuously informing consumers about the defect, and as such, YMUS' express warranty was unconscionable.  Plaintiff and the members of the Class did not receive the goods expressly warranted by YMUS.

30.     The time limits contained in YMUS' written warranties are also unconscionable and grossly inadequate to protect Plaintiff and the members of the Class.   Among other things, Plaintiff and the members of the Class had no meaningful choice in determining those time limitations.   Further, the time limitations of the warranties unreasonably favored YMUS over Plaintiff and the members of the Class, given the fact that while corrosion began to develop almost immediately after purchase (gradually worsening), the problems only became

manifest and noticeable after 500 to 700 hours of use, and most recreational boat owners use their outboard motors less than 100 hours per year.  Finally, the time limitations are unconscionable because Defendants knew or should have known that the First Generation Four Stroke Outboards were defective at the time of sale, but would fail well before their useful lives, thereby rendering the time limitations insufficient, inadequate and unconscionable.

31.    By marketing, selling and distributing First Generation Four Stroke Outboards to purchasers in the United States, Defendants made actionable statements that the outboards were free of defects in their design and/or manufacture, and that they were safe and fit for their ordinary intended use and purpose.

32.    By marketing, selling and distributing First Generation Four Stroke Outboards to purchasers in the United States, Defendants made actionable statements that the ordinary use of the outboards would not involve undisclosed safety risks.  Further, Defendants concealed what they knew or should have known about the safety risks resulting from the material defects in design and/or manufacture.

33.    Additionally, in marketing, selling and distributing First Generation Four Stroke Outboards to purchasers in the United States, Defendants concealed or failed to disclose to these purchasers, including Plaintiff and the Class members,

that in order to keep the outboards in use after the warranty period, significant repair or replacement costs would be incurred.

34. Defendants made the above described actionable statements, omissions and concealments with knowledge that the representations were false and misleading, and with the intent that consumers would rely upon such concealment, suppression and omissions. Alternatively, Defendants were reckless in not knowing that these representations were false and misleading at the time they were made. Defendants obviously had exclusive access to data and research conducted prior to the design and manufacture of the outboards.

35. Repair or replacement of corroded parts in First Generation Four Stroke Outboards involves significant cost and expense to consumers such as Plaintiff and the other members of the Class. Further, once the corrosion problems were detected, some consumers have incurred the premature expense of purchasing a new outboard engine, rather than paying the prohibitive cost of repairs (in some cases, owners reported being faced with repair estimates totaling 50% of the cost of simply abandoning the defective outboard and purchasing a new engine from the dealer). One owner reported in an online post that, faced with severe corrosion to both his twin First Generation Four Stroke Outboards, he spent $34,000 to replace the engines with new ones, discarding the old engines after only 500 hours of use.

36.     Plaintiff purchased a boat equipped with a new First Generation Four Stroke Outboard (specifically model number F200), from Jacobsen's Marine in Seattle, Washington, one of Defendants' authorized dealers of new Yamaha outboards, on September 6, 2003.   His written warranty expiration date was September 4, 2006.  Plaintiff used his outboard approximately 688 hours between September 6, 2003 and November 15, 2011, without incident and with regularly scheduled service.   Plaintiff otherwise followed all recommended maintenance procedures for his First Generation Four Stroke Outboard engine.

37.     After Plaintiff noticed that his boat was leaking oil, he brought the boat in to Jacobsen's Marine for service and inspection on November 15, 2011. On information and belief, Jacobsen's Marine is an authorized Yamaha outboard motor dealer.   Plaintiff brought the boat for inspection at Jacobsen's place of business.

38.     At Jacobsen's Marine, Plaintiff was initially told he needed replacement of his oil pump on his outboard engine.  When the mechanic took the head of the engine off to begin the oil pump replacement, he discovered severe corrosion damage to internal engine components.  In the end, Plaintiff paid a repair invoice in the total amount of $3,011.91, which included a $1,001.10 charge for parts and labor incurred to replace the corroded engine oil pan, exhaust manifold, and other component parts.  Regarding the $1,001.10 charge to Plaintiff related to the corrosion, the service technician detailed the repair work as follows:

FOUND CORROSION ON OIL PAN AND EXHAUST PARTS. REMOVED GEARCASE AND DISASSEMBLED EXHAUST HSG COMPLETE.  REPLACED ALL CORRODED PARTS.  ASSEMBLED EXHAUST HSG AND INSTALLED GEARCASE.  INSTALLED POWERHEAD ASSY.  STARTED AND RAN MOTOR IN TANK. CHECKED OPERATION, GOOD.  INSPECTED FOR LEAKS OF OIL, WATER OR FUEL, NONE.

See Exhibit B.

39.     Plaintiff was not alone in experiencing rampant corrosion in his First Generation Four Stroke Outboard or in incurring significant repair costs.  As was reported in a story published in the October/November 2012 edition of BoatUS Magazine (the "BoatUS Magazine article"), the unusual corrosion problems specifically among First Generation Four Stroke Outboards led to a series of complaints with BoatUS's Consumer Protection Bureau.

40.     As the BoatUS Magazine article reports, First Generation Four Stroke Outboards have repeatedly manifested the specific problem that after 500 to 700 hours of use, the engine's exhaust gases corrode the exhaust tube and sometimes also the engine's oil pan, which is in the same area.  The BoatUS Magazine article quotes an interview with a marine surveyor:  "I've seen the damage to six engines myself, and know of least a dozen others in the New Jersey area."

41.     The same surveyor told BoatUS Magazine that the failure not wa*s **not outwardly visible**.  According to the surveyor, the engine may lose power and begin to smoke, and in some cases, the oil dipstick can be blown out of the engine from the exhaust gas pressure.

42.     BoatUS Magazine reported that a marine surveyor in Massachusetts inspected three ruined First Generation Four Stroke Outboards and determined that because the corrosion happened internally, and to the dry side of the exhaust where no cooling water is present, then flushing procedures would have no effect on the buildup of corrosion.  BoatUS Magazine reported the surveyor to opine that there was *nothing an owner could have done to prevent serious corrosion from eventually eating through the exhaust system*.  Indeed, flushing only affects the water passages on the "wet" side of the engines, and while effective in getting salt and debris out of these passages, makes no difference to the performance of component parts in the dry exhaust cavities.

43.     BoatUS Magazine reported that six BoatUS members had contacted the magazine reporting experience of the corrosion problem with their First Generation Four Stroke Outboards.

44.     After publication of the BoatUS Magazine article, on or about March 18, 2013, BoatUS's Director of Consumer Protection, Charles Fort, announced by email to a group of BoatUS members that BoatUS had been negotiating with Defendants on a "program" to address the corrosion in the First Generation Four Stroke Outboards.  According to BoatUS, Defendants agreed to gather information and obtain service records from BoatUS members experiencing a problem, and make a determination on a case-by-case basis.

45.     Over the ensuing weeks, the BoatUS members exchanged emails with one another regarding their common experiences with problems with First Generation Four Stroke Outboards, their attempts to seek relief from Yamaha, and their participation in the "program" announced as a result of the BoatUS-led negotiations.  These BoatUS members are all members of the proposed Class of purchasers of First Generation Four Stroke Outboards located throughout the United States.

46.     The BoatUS members exchanging emails reported many instances of expensive repair costs incurred as the result of problems with their First Generation Four Stroke Outboards, including problems as serious as complete engine failure, and experienced with as few as 450 hours of use.  The BoatUS members reported spending as much as $10,000 per engine to have repairs completed and necessary component parts replaced.  Some owners reported using two outboard engines operating on the same boat, doubling the cost of repairs.   They reported similar experiences in that the corrosion occurred even though they had properly maintained the engines including flushing the engines regularly as recommended.

47.     The BoatUS members' complaints demonstrate Yamaha's complete failure to provide a satisfactory remedy to resolve the defects or to compensate their customers for their economic losses caused by the defective condition of the First Generation Four Stroke Outboards.

48.     As detailed in the email exchanges, one BoatUS member who took advantage of the "program" announced as a result of the BoatUS-led negotiations was offered $700 toward his $5,000 repair cost, which he rejected.   Another member participating in the "program" was denied any assistance at all on his $4,139.65 repair bill. Other members participating in the "program" rejected offers from Defendants amounting to nothing more than an extended warranty only if a new motor was purchased.  Still other members reported that they submitted their information to Yamaha, but did not hear back from them.

49.     In short, based on available information, Defendants' "program" did little if anything to correct the problem or remedy the losses of the members of the Class.

50.     Further, many BoatUS members reported being told by Defendants that it disclaimed liability for the defect due to the expiration of their three-year warranties, requiring customers to pay for the repairs or replacement of component parts themselves.  While the members reported being told that their warranties had expired, there were no reports that Defendants had denied them relief because they were requesting coverage of damages excluded under the terms of the warranties.

51.     Aside from the BoatUS email exchanges, the problems with corrosion in First Generation Four Stroke Outboards were also a frequent topic in online forums frequented by boating enthusiasts.   As an example, one post at www.yamahaoutboardparts.com detailed dry exhaust corrosion issues developing

after only 450 hours of use and which led to a $4,000 repair estimate for parts alone (not including labor), which the customer compared and described as ***"like a young kid needing a 'root canal'."***

52.     Other online comments support the fact discussed by the BoatUS members that the problems with internal corrosion to the dry exhaust internal component parts were not outwardly visible, even to those making inspection with the aid of flashlights, having been made aware of the bad corrosion history of the First Generation Four Stroke Outboards.   Indeed, on numerous occasions, it is consistently reported by owners that the internal corrosion was only visible upon professional disassembly and removal of the power heads.

53.     The undisclosed defects are material because neither Plaintiff nor the members of the Class would have purchased the First Generation Four Stroke Outboards if they had known of the defect.

54.     An expensive new outboard engine is not meant to be disposable at the conclusion of the manufacturers' warranty.  Outboard engines, if properly used and maintained, can and should last for a long time.  Specifically, an outboard engine should perform and function for as many as two thousand hours of use before the engine becomes in need of an overhaul.  Therefore, the presence of a defect which would necessitate a major overhaul or expensive replacement of internal component parts, within 500 to 700 hours of use, is material information to consumers.

55.   A reasonable consumer would not expect the onset of serious corrosion relatively early in the useful life of the motors, with the motors being properly maintained.  This is true regardless of the durational period of any written warranty.  To enjoy the outboard engine for its intended use, a consumer would not expect to have to incur very expensive repair and replacement costs in order to be able to use the outboards beyond the durational period of the written warranty and after as few as 500 hours of use.

56.   The internal component parts reported to have suffered widespread problems with corrosion, including the engine oil pan and exhaust tubes, are integral to the operation of the engines.  The severe corrosion of internal parts and components such as the engine oil pan and the exhaust tubes leads to increased risk of total engine failure while on the water or at sea. Indeed, without correction, the damage to internal parts caused by the corrosion would ultimately lead to inevitable engine failure while on the water or at sea.

57.   The widely reported problems with severe corrosion to internal dry exhaust components in the First Generation Four Stroke Outboards is not believed to be salt-water related.   On information and belief, the severe corrosion was experienced by owners who used their boats on fresh water as well as those who used their boats at sea.

58.    Based on the increased risk of engine failure alone, the First Generation Four Stroke Outboards purchased by all Class members were worth less than the purchase price that was paid.

59.    The possibility of a complete engine failure while at sea is a serious known safety risk for boat operators.  Because of the latent undisclosed defects, Plaintiff and the other members of the Class unknowingly took additional safety risks from use of the First Generation Four Stroke Outboard motors.  Plaintiff and the Class expressly disclaim any recovery for physical injury flowing from accidents caused by corrosion to the Yamaha outboard motors at issue. Nevertheless, the increased safety risk they took is an obvious consequence of Defendants' defective design and serves as an independent justification for the relief sought by Plaintiff and the Class.

60.    On information and belief, second generation or next-generation high powered four stroke outboard motors were introduced by Defendants in or around 2005.

61.    On information and belief, second generation or next-generation high powered four stroke outboard motors manufactured, marketed and sold by Defendants from 2005 onward had a design and/or manufacturing change which corrected the defect and as a result, the problems with massive corrosion to internal components with four stroke motors ceased to exist and was no longer an issue for Yamaha or for their customers.

62.     On information and belief, the design change introduced in 2005 dealt with the materials used in paint coating, and/or the methods by which Defendants apply the paint coating to the internal cooling passages of the high powered four stroke outboard motors.  Regarding the new design with paint coating, one affected owner went online to describe new F225 replacement parts he had seen, which he described as having on it "a coating like a frying pan . . . that the old one never had."  Another online comment from an owner who was sent replacement exhaust manifold parts identified a new coating which appeared on the replacement parts, which was described as appearing "on all the surfaces (internal and external)" and that it was "similar to Teflon."

63.     The development and implementation of the design change to the second or next generation of high powered four stroke outboard motors (and the replacement parts provided for damaged First Generation Four Stroke Outboards) is demonstrative of Defendants' knowledge or recklessness with regard to the extensive corrosion problem experienced by purchasers of First Generation Four Stroke Outboards.

64.     By coating the new parts differently, and by coating the internal components of the next generation or second generation four stroke motors differently, Defendants have acknowledged that there is a defect with the First Generation Four Stroke Outboards.  However, Defendants have remained silent in hopes that the problem would quietly disappear, have not issued a service bulletin

to fix the defective parts, have not instituted a recall of the defective products, and have not financially compensated the purchasers of the defective products or otherwise remedied the problems experienced by their customers in any meaningful way.

## **CLASS ALLEGATIONS**

65.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

66.     Plaintiff brings this action on his own behalf and on behalf of a Class under Rules 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

67.     Plaintiff seeks to represent a Class initially defined as:

> All persons located in the United States, or in such states as the Court determines to be appropriate, who purchased one or more Yamaha 2000 to 2004 model year, First Generation Four Stroke Outboard motors ("First Generation Four Stroke Outboards").

68.     Excluded from the Class are individuals who have claims for personal injury resulting from failure of Yamaha outboard motors.  Also excluded from the Class are Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which Defendants have a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; any Judge to whom this case is assigned as well as his or her immediate family and staff; and anyone who purchased First Generation Four Stroke Outboard motors for resale.

69.     Plaintiff reserves the right to amend or modify the Class definition in connection with a motion for class certification or as the result of discovery.

70.    This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Federal Rule of Civil Procedure 23.

71.    Plaintiff does not know the exact size or identities of the proposed Class, however, Plaintiff believes that the Class encompasses many thousands or tens of thousands of individuals who are dispersed geographically throughout the United States.  Therefore, the proposed class is so numerous that joinder of all members is impracticable.  Class members may be notified of the pendency of this action by mail and/or electronic mail, supplemented if deemed necessary or appropriate by the Court by published notice.

72.    There are questions of law and fact that are common to the Class, and predominate over any questions affecting only individual members of the Class. The injuries sustained by Plaintiff and the other members of the Class flow from the common nucleus of operative facts surrounding Defendants' misconduct.  The common questions include, but are not limited to the following:

a.    whether  Defendants provided Plaintiff and the other Class members with an outboard motor with defective design and/or manufacture which led to premature onset of corrosion;

b.    whether Defendants knew or should have known of the defective design and/or manufacture;

c.   whether the defective design and/or manufacture constitute material facts to purchasers of the First Generation Four Stroke Outboards;

d.   whether Defendants have a duty to disclose the defective nature of the outboard motors;

e.   whether the defective design and/or manufacture leads to premature onset of corrosion in the First Generation Four Stroke Outboards;

f.   whether the defective design and/or manufacture leads to increased damage to other component parts, engine failure, and associated safety risks;

g.   whether Defendants have engaged in unlawful, unfair or fraudulent business practices; and

h.   whether Plaintiff and the other Class members are entitled to equitable relief, including but not limited to restitution or injunctive relief.

73.   Plaintiff's claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class in that both the Plaintiff and the other members of the Class purchased First Generation Four Stroke Outboards with the same defective design and/or manufacture as found in other outboard motors.

74.   Plaintiff will fairly and adequately represent the interests of the Class. He is committed to the vigorous prosecution of the Class' claims and has retained

attorneys who are qualified to pursue this litigation and have experience in class action litigation.

75. A class action is superior to other methods for the fast and efficient adjudication of this controversy. While substantial, the injuries suffered by each individual Class member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Further, it would be virtually impossible for the members of the Class to individually and effectively redress the wrongs done to them. A class action regarding the issues in this case does not create any problems of manageability. The class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

76. In the alternative, the Class may be certified because:

i. the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

ii. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or

substantially impair or impede the ability to protect their interests; and

iii.  Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

<u>**COUNT I**</u>

**VIOLATIONS OF MAGNUSON-MOSS FEDERAL WARRANTY ACT 15 U.S.C. §2301, et seq.**

77.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

78.    Yamaha's First Generation Four Stroke Outboards constitute "consumer products," as defined in 15 U.S.C. §2301.

79.    Plaintiff and the other Class members are "consumers," as defined in 15 U.S.C. §2301.

80.    Defendants are "suppliers" of the First Generation Four Stroke Outboards as defined in 15 U.S.C. §2301.

81.    Defendant YMUS is a "warrantor" as defined in 15 U.S.C. §2301.

82.    Defendant YMUS supplied a "written warranty" regarding their First Generation Four Stroke Outboards, as defined in 15 U.S.C. §2301(6).

83.     As suppliers and in connection with the sale of First Generation Four Stroke Outboards, Defendants made "implied warranties" arising under State law regarding their First Generation Four Stroke Outboards, as defined in 15 U.S.C. §2301(7).

84.     The warranties made by Defendants pertained to consumer products costing the consumer more than five dollars, see 15 U.S.C. §2302(e).

85.     Plaintiff invokes federal jurisdiction for his claims stated under this Count pursuant to the Class Action Fairness Act.

86.     Defendants violated the Magnuson-Moss Federal Warranty Act by their failure to comply with the express and implied warranties that they made to Plaintiff and other Class members.  See 15 U.S.C. §2301, et seq.

87.     Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the Magnuson-Moss Federal Warranty Act claims of Plaintiff and the Class members, whether premised upon express or implied warranty, is procedurally and substantively unconscionable under federal law and the applicable state common law.

88.     Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims of Plaintiff and the Class in this count is tolled under equitable doctrines.

89.     Plaintiff requests that this Court make an initial determination to establish his representative capacity to act on behalf of the Class.

90.     Plaintiff and the other Class members sustained injuries as a proximate result of Defendants' violation of their written and/or implied warranties. Plaintiff and the members of the Class are entitled to injunctive relief including recall and replacement, restitution, rescission or other relief as appropriate.

## COUNT II

### BREACH OF STATE EXPRESS WARRANTIES

91.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

92.     Defendants, acting in unison and as agents of one another, marketed and sold and distributed First Generation Four Stroke Outboards to Plaintiff and the Class members in the regular course of their business.

93.     Defendants expressly represented and warranted to Plaintiff and the members of the Class, by and through statements, descriptions, and affirmations of fact made by Defendants or their authorized agents or sales representatives, that First Generation Four Stroke Outboards were free of defects and were safe for ordinary use on recreational boats.

94.     Further, Defendant YMUS issued a written warranty accompanying Defendants' outboard motors, see Exhibit A hereto, which expressly warranted to Plaintiff and the members of the Class that the First Generation Four Stroke Outboards were free from defects in materials and workmanship and fit for their

intended use.   The written warranty included with Plaintiff's and the Class members' outboards provided that the outboards "will be free from defects in material and workmanship."

95.    In reliance upon said express warranties by Defendants, Plaintiff and the Class members purchased First Generation Four Stroke Outboards.

96.    Defendants' First Generation Four Stroke Outboards failed to comply with Defendants' express warranties because they suffered from inherent design and/or manufacturing defects which, from the date of purchase forward, rendered the outboards unfit for their intended use and purpose.

97.    When Plaintiff's First Generation Four Stroke Outboard failed, he brought the engine to the place of business of an authorized Yamaha dealer for inspection and repairs, but neither Yamaha nor the dealer offered relief, saddling Plaintiff with the full cost of repairs and replacement parts.

98.    Defendants knew or had reason to know that First Generation Four Stroke Outboards did not conform to these express representations because they were not as safe, or usable, or free of defects as Defendants represented.

99.    The First Generation Four Stroke Outboards purchased by Plaintiff and the members of the Class, from the date of purchase forward, were not free from defects in material and workmanship.

100.   Defendants' actions, as complained of herein, violate Wash. Stat. Ann. 62A.2-313 and other similar state statutes.   This Count is thus brought on

behalf of members of the Class who reside in the State of Washington and in such other states with laws similar to Wash. Ann. 62A.2-313 as the Court determines to be appropriate (including California), where the statutes outlining the cause of action for a breach of express warranty are substantially the same, or where similarities of the statutes vastly outweigh any differences in them.

101.    Defendants' breach of their express warranties directly and proximately caused Plaintiff and the members of the Class to suffer injuries including having paid for defective products and entering into transactions they would not have entered into but for Defendants' acts.

102.    Based on the facts alleged herein, any durational limitation to the express or implied warranties that would otherwise bar the warranty claims of Plaintiff and the Class members is procedurally and substantively unconscionable.

103.    Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims of Plaintiff and the Class in this count is tolled under equitable doctrines.

104.    Plaintiff and the members of the Class are entitled to injunctive and equitable relief against Defendants, including recall and replacement, restitution and/or other relief as appropriate.

/ / /

/ / /

/ / /

## COUNT III

### BREACH OF STATE IMPLIED WARRANTIES

105.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

106.    Defendants marketed and sold First Generation Four Stroke Outboards to Plaintiff and the members of the Class in the regular course of business.

107.    Defendants impliedly warranted to Plaintiff and the Class members that the First Generation Four Stroke Outboards were of merchantable quality, would pass without objection in the trade or business under the contract description, and were free of material defects and fit for the ordinary purposes for which they are used.

108.    The implied warranty included, among other things, a warranty that the First Generation Four Stroke Outboards were safe for use and that they would not be subject to onset of severe corrosion necessitating expensive repair and replacement costs early in their expected useful life.

109.    Defendants as sellers of the First Generation Four Stroke Outboards breached their implied warranties of merchantability by selling Plaintiff and the Class members defective First Generation Four Stroke Outboards that have developed problems with severe corrosion early in their expected useful life.  The defect renders the First Generation Four Stroke Outboards unfit for their ordinary

use and purpose.  Defendants have refused to recall, repair or replace, free of charge, the defective outboard motors or their component parts.

110.   The inherent design and/or manufacturing defect in the First Generation Four Stroke Outboards existed when the motors left Defendants' possession and renders the outboard motors unfit for their intended use and purpose.

111.   Defendants' actions, as complained of herein, breached the implied warranty that First Generation Four Stroke Outboards were of merchantable quality and fit for their intended use and purpose in violation of Wash. Stat. Ann. 62A.2-314 and other similar state statutes.  This Count is thus brought on behalf of members of the Class who reside in the State of Washington and in such other states with laws similar to Wash. Ann. 62A.2-314 as the Court determines to be appropriate (including California), where the statutes outlining the cause of action for a breach of implied warranty of merchantability are substantially the same, or where similarities of the statutes vastly outweigh any differences in them.

112.   As a direct and proximate result of Defendants' breach of its implied warranties, Plaintiffs and members of the Class have suffered injuries including having paid for defective products and entering into transactions they would not have entered into but for Defendants' acts.

113.    Based on the facts alleged herein, any durational limitation to the express or implied warranties that would otherwise bar the warranty claims of Plaintiff and the Class members is procedurally and substantively unconscionable.

114.    Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims of Plaintiff and the Class in this count is tolled under equitable doctrines.

115.    Plaintiff and the Class members are entitled to equitable and injunctive relief against Defendants, including recall and replacement, restitution and/or other relief as appropriate.

## **COUNT IV**

**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**California Civil Code § 1750, et seq.**

116.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

117.    Defendants' conduct that violated and continues to violate the CLRA, includes without limitation, the following:

> i.   Representing that their First Generation Four Stroke Outboard motors have characteristics, uses, and benefits which they do not have in violation of Section 1770(a)(5); and/or

> ii.  Representing that their First Generation Four Stroke Outboard motors are of a particular standard or quality, when they are of another, in violation of Section 1770(a)(7).

118.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of the CLRA when Defendants failed to disclose and/or concealed material facts from Plaintiff and the other members of the Class, namely, the defective design and/or manufacture of the First Generation Four Stroke Outboard motors, and that said outboard motors were likely to prematurely experience serious corrosion, with attending risks of engine failure and corresponding safety risks.

119.   The information Defendants failed to disclose was material.  Had Defendants disclosed the defective design and/or manufacture, and that they were subject to costly replacement and/or repair, consumers would have behaved differently, by either not purchasing the outboard motors in question, or insisting on paying less for them.  A reasonable consumer would not expect to have to undergo extremely expensive repair and replacement of corroded component parts after as few as 500 to 700 hours of use.

120.   Plaintiff, although not a California resident, was harmed by Defendants' aforementioned unlawful business acts and practices occurring in the State of California (as well as in Japan).  Further, all members of the Class, regardless of their state of residence, were harmed by Defendants' practices occurring in California.

121.   Pursuant to Cal. Civ. Code §1782(a), Plaintiff and the Class seek equitable relief as permitted under the CLRA and applicable law.

122.    Pursuant to §1782 of the Act, Plaintiff notified Defendant in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act.   A copy of the letter is attached hereto as Exhibit C.

123.    If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

124.    Defendant's conduct is fraudulent, wanton and malicious.

125.    Pursuant to §1780(d) of the Act, attached hereto as Exhibit D is the affidavit showing that this action has been commenced in the proper forum.

## COUNT V

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

126.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

127.    Defendants' business acts and practices complained of were centered in, carried out, effectuated and perfected in Japan and within the State of California.   Defendants' business acts and practices complained emanated from

Japan and from the State of California throughout the United States, and injured all Class members.

128.     Plaintiff, although not a California resident, was harmed by Defendants' aforementioned unlawful business acts and practices occurring in the State of California (as well as in Japan). Further, all members of the Class, regardless of their state of residence, were harmed by Defendants' practices occurring in California.

129.     Beginning in at least 2000, Defendants committed acts of unfair competition, as defined by California Business and Professions Code, §§17200, et. seq., by engaging in the acts and practices specified above.

130.     This claim is instituted to obtain equitable monetary and injunctive relief from Defendants for acts and practices, as alleged herein, that violated §17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

131.     Defendant engaged in "unlawful" business acts and practices by violating the Magnuson-Moss Warranty Act, 15 U.S.C. §§2301, et seq., by violating the Consumer Legal Remedies Act, California Civil Code §§1750, et seq., and breaching implied warranties.

132.     Defendants engaged in "unfair" business acts and practices by, among other things, manufacturing and selling First Generation Four Stroke Outboards

knowing or being aware they contained defects that cause early onset of severe corrosion within the commonly expected useful life of the motors.

133.    The acts and practices of Defendants have caused Plaintiff and the Class members to lose money or property by being overcharged for and paying for the defective outboard motors at issue.  Such loss was the result of the above acts of unfair competition and Defendants' misconduct in violation of the laws set forth above.

134.    Defendants have been unjustly benefitted as a result of their wrongful conduct and their acts of unfair competition.  Plaintiff and the Class members are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues and profits that may have been obtained by Defendants as a result of such business acts and practices, pursuant to California Business and Professions Code §§17203 and 17204.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests the following relief:

a.    Certification of this case as a class action and certification of Plaintiff herein to be an adequate Class representative and their counsel to be class counsel;

b.    The granting of injunctive relief including but not limited to a recall or free replacement program, or rescission;

c.    An award of restitution and/or disgorgement in an amount to be determined at trial; and

e.     The granting of such other and further relief as this Court finds

necessary and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all issues so triable.

DATED: July 15, 2013

BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.

MANFRED P. MUECKE (222893)
mmueke@bffb.com
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone:  (619) 756-7748
Fac: (602) 274-1199

VAN BUNCH
*(To be Admitted Pro Hac Vice)*
vbunch@bffb.com
T. BRENT JORDAN
*(To be Admitted Pro Hac Vice)*
bjordan@bffb.com
BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.
2325 E. Camelback Road, #300
Phoenix, AZ  85016
Telephone:  (602) 274-1100
Fax:  (602) 274-1199

DEBRA BREWER HAYES
*(To be Admitted Pro Hac Vice)*
dhayes@dhayeslaw.com
CHARLES CLINTON HUNTER
(CA Bar No. 93987)
chunter@rbfirm.net
REICH & BINSTOCK, LLC
4265 San Felipe, Suite 1000
Houston, TX  77027
Telephone: (713) 622-7271
Fax: (713) 623-8724

- 37 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STEPHEN M. HANSEN
(*To be Admitted Pro Hac Vice*)
LAW OFFICES OF STEPHEN M. HANSEN
1821 Dock St., Unit 103
Tacoma, WA  98402
Telephone: (253) 302-5955

Attorneys for Plaintiff

# EXHIBIT A

2004 owners manual F225.pdf (SECURED) - Adobe Acrobat Pro



**YAMAHA**

F200C
LF200C
F225C
LF225C

OWNER'S MANUAL

U.S.A. Edition
LIT-18626-05-32



EMJ61404

# YAMAHA MOTOR CORPORATION, U.S.A. FOUR-STROKE
# OUTBOARD MOTOR THREE-YEAR LIMITED WARRANTY

Yamaha Motor Corporation, U.S.A. hereby warrants that new Yamaha 1999-or-later model four-stroke outboard motors originally distributed by Yamaha Motor Corporation, U.S.A. will be free from defects in material and workmanship for the period of time stated herein, subject to certain stated limitations. Warranty coverage for outboards distributed by non-US Yamaha affiliated companies may be different.

**PERIOD OF WARRANTY.** Any new Yamaha 1999-or later model four-stroke outboard motor purchased and registered with Yamaha Motor Corporation, U.S.A. for pleasure use in the United States, will be warranted against defects in material or workmanship for a period of three (3) years from the date of purchase, subject to exclusions noted herein. Any Yamaha outboard motor purchased and utilized for commercial applications will be warranted for a period of one (1) year from the date of purchase, subject to exclusions noted herein. Yamaha peripheral equipment included with this motor such as gauges, fuel tanks, and hoses, remote control boxes, and wiring external from the motor unit, will be warranted for one (1) year from the date of purchase of either pleasure or commercial use. Replacement parts used in warranty repairs will be warranted for the balance of the applicable warranty period.

The second and third year of warranty (if applicable) shall be limited to covering the cost of parts and labor for major components only. The major components covered are:

**Power Unit Section**
- Power Head
- Intake Manifold
- Carburetor Assembly and its Related Components
- Fuel Injection System and its Related Components
- Fuel and Oil Pump Assemblies
- Ignition System (Standard and Microcomputer)

**Lower Unit Section**
- Exhaust System
- Upper Casing
- Lower Unit Assembly

**Bracket Section**
- Bracket System
- Power Trim and Tilt Assembly

**WARRANTY REGISTRATION.** To be eligible for warranty coverage, the outboard motor must be registered with Yamaha Motor Corporation, U.S.A. Warranty registration can be accomplished by any authorized Yamaha Outboard Motor Dealer. Upon receipt of the registration, an Owner's Warranty Card will be sent by Yamaha to the registered purchaser.

**OBTAINING REPAIRS UNDER WARRANTY.** To receive repairs under this warranty, a valid Owner's Warranty Card must be presented to an authorized Yamaha Outboard Motor Dealer.

During the period of warranty, any authorized Yamaha outboard dealer will, free of charge, repair or replace, at Yamaha's option, any parts adjudged defective by Yamaha due to faulty workmanship or material from the factory. All replaced parts will become the property of Yamaha Motor Corporation, U.S.A.

**CUSTOMER'S RESPONSIBILITY.** Under the terms of this warranty, the customer will be responsible for ensuring that the outboard motor is properly operated, maintained, and stored as specified in the applicable Owners Manual.

The owner of this outboard motor shall give notice to an authorized Yamaha Outboard Motor Dealer of any and all apparent defects within ten (10) days of discovery and make the motor available at that time for inspection and repairs at the dealers place of business.

**GENERAL EXCLUSIONS FROM WARRANTY.** This warranty will not cover the repair of damage if the damage is a result of abuse or neglect of the product. Examples of abuse and neglect include, but are not limited to:

1.  Racing or competition use, modification of original parts, abnormal strain.
2.  Lack of proper maintenance and off season storage as described in the Owners Manual, installation of parts or accessories that are not equivalent in design and quality genuine Yamaha parts.
3.  Operation of the motor at an rpm other than specified, use of lubricants or oils that are not suitable for outboard motor use.
4.  Damage as a result of accidents, collisions, contact with foreign materials, or submersion.
5.  Growth of marine organism on motor surface.
6.  Normal deterioration.

**SPECIFIC PARTS EXCLUDED FROM WARRANTY.** Parts replaced due to normal wear or routine maintenance such as oil, spark plugs, shear pins, propellers, hubs, fuel and oil filters, brushes for the starter motor and power tilt motor, water pump impellers, and anodes, are not covered by warranty.

Charges for removal of the motor from a boat and transporting the motor to and from an authorized Yamaha Outboard Motor Dealer are excluded from warranty coverage.
Specific parts excluded from the second and third year of warranty (if applicable) are:
- Top and Bottom Cowling
- Electric Components (other than ignition system)
- Rubber Components (such as hoses, tubes, rubber seals, fittings, and clamps)

**TRANSFER OF WARRANTY.** Transfer of the warranty from the original purchaser to any subsequent purchaser is possible by having the motor inspected by an authorized Yamaha Outboard Motor Dealer and requesting the dealer to submit a change of registration to Yamaha Motor Corporation, U.S.A. within ten (10) days of the transfer.

*YAMAHA MOTOR CORPORATION, U.S.A. MAKES NO OTHER WARRANTY OF ANY KIND. EXPRESSED OR IMPLIED. ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WHICH EXCEED THE OBLIGATIONS AND TIME LIMITS STATED IN THIS WARRANTY ARE HEREBY DISCLAIMED BY YAMAHA MOTOR CORPORATION, U.S.A. AND EXCLUDED FROM THIS WARRANTY.*

*SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS. SO THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU. ALSO EXCLUDED FROM THIS WARRANTY ARE ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING LOSS OF USE. SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES. SO THE ABOVE EXCLUSION MAY NOT APPLY TO YOU.*

*THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.*

YAMAHA MOTOR CORPORATION, U.S.A.
Post Office Box 6555
Cypress, California 90630



# EXHIBIT B

# JACOBSEN'S MARINE

### WE APPRECIATE YOUR BUSINESS
2625 HARBOR AVE. S.W.    SEATTLE, WA   98126    (206)-789-7474

**WORK ORDER 18390**         **Invoice 108481**    **Reprint**
11/15/2011                              **18390**                          15:10:10

```
14439                          Year/Make: 03 192 GRADY WHITE
WILLIAMS,GEORGE                    Model: F200HP YMAAHA Loa:  19
3303 NW 72ND                   CG Number: WN3149RN        Hrs: 688
SEATTLE, WA 98117-            Serial No: NTLBC498F303
                                  Vessel: PLATE #3604RG
  -   -    WK#206-276-8022          Warr:  /  /
```

**INVOICE FOR WORK PERFORMED FOR BOAT/VESSEL PLATE #3604RG & OWNERS**

```
SERVICE ENGINE
CUSTOMER HIT LOG, LOOK AT LOWER UNIT
WHEN TILTING MOTOR UP, HOSES AND WIRES LOOK LIKE THAY ARE GETTING PULLED
STEERING LEAK IN SPLASH WELL, CHEAK SEALS
```

| 1 | : | 1 | : | **TUNE AND LUBE** | | | | **(T/M)** |

```
CHECKED COMPRESION, 190 LBS ALL CYLINDERS.  INSTALLED NEW
SPARK PLUGS.  CHANGED MOTOR OIL AND FILTER.  REPLACED
POWERHEAD INTERNAL ANODES.  CHANGED FUEL WATER SEPARATOR
FILTER.  CHANGED ENGINE FUEL FILTER.  INSPECTED TIMING BELT,
OK.  CHANGED TRANSOM BRACKET ANODE.  CHECKED TNT FLUIDE, OK.
CHANGED GEAR OIL AND LUBED.  GREASED AND INSPECTED PORPSHAFT.
CHANGED GEARCASE TRIM TAB ANODE.  STARTED AND RAN MOTOR IN
TANK.  CHECKED WATER PUMP AND THERMOSTAT OPERATION, GOOD.
CHECKED SHIFT AND THROTTLE, GOOD.  MOTOR STARTED AND RAN GOOD.
```

| Part Number | Description | Bin | Qty | Price | Ext Price |
|---|---|---|---|---|---|
| 69J-13440-01-00 | ELEMENT ASSY, OIL C | | 1 | 27.20 | 27.20 |
| Y10W30 | 10W30  YAMAHA 10W30 | | 6 | 4.85 | 29.10 |
| LFR5A-11-00 | NGK SPK/PLUG | | 6 | 5.95 | 35.70 |
| 67F-11328-00-00 | GROMMET, ANODE | | 4 | 1.20 | 4.80 |
| 68V-11325-01-00 | ANODE | | 4 | 21.55 | 86.20 |
| 65L-24563-00-00 | ELEMENT, FUEL FILTE | | 1 | 19.50 | 19.50 |
| MAR-FUELF-IL-TR | FUEL/WATER FILTER - | | 1 | 24.50 | 24.50 |
| 6G5-45251-02-00 | ANODE | | 1 | 24.95 | 24.95 |
| 90430-08020-00 | GASKET A LOWER GEAR | | 2 | 1.00 | 2.00 |
| LUBE | LUBE OUTBOARD | | 1 | 12.50 | 12.50 |
| 61A-45371-00-00 | TRIM-TAB A | | 1 | 26.80 | 26.80 |
| 314502 | COTTER PIN 10 PK | | 1 | 0.70 | 0.70 |
| | | | | **Material:** | **293.95** |

| Date | | Description | | Hours | Price |
|---|---|---|---|---|---|
| 10/19/2011 | 203 | Labor JMS | | 3.00 | 375.00 |
| | | | | **Labor:** | **375.00** |
| | | | | **Subtotal:** | **$668.95** |

| 2 | : | 2 | : | **OIL LEAK** | | | | **(T/M)** |

```
FOUND NO OIL LEAK ON STEERING.  CHECKED MOTOR,  OIL PUMP
LEAKING OIL.
```

WORK ORDER 18390        Invoice 108481    Reprint  Page 2
11/15/2011                      **18390**
                                                              15:10:10

    REMOVED POWERHEAD.  CHANGED OIL PUMP ASSY.  INSTALLED
    CRANKSHAFT SLEEVE ON CRANKSHAFT.

| Part Number | Description | Bin | Qty | Price | Ext Price |
|---|---|---|---|---|---|
| MAR-CRKSL-VE-00 | CRANK REPAIR SLEEVE | | 1 | 44.00 | 44.00 |
| 93210-25552-00 | O-RING | | 2 | 5.05 | 10.10 |
| 69J-11351-01-00 | GASKET, CYLINDER | | 1 | 21.95 | 21.95 |
| 69J-11355-00-00 | SEAL, CYLINDER 1 | | 1 | 17.00 | 17.00 |
| 69J-13300-01-00 | OIL PUMP ASSY | | 1 | 300.00 | 300.00 |
| | | | | **Material:** | **393.05** |

| Date | | Description | | Hours | Price |
|---|---|---|---|---|---|
| 11/08/2011 | 203 | Labor JMS | | 5.50 | 687.50 |
| | | | | **Labor:** | **687.50** |
| | | | | **Subtotal:** | **$1080.55** |

**3      3          MID SECTION                   (T/M)**

    FOUND CORROSION ON OIL PAN AND EXHAUST PARTS.  REMOVED
    GEARCASE AND DISASSEMBLED EXHAUST HSG COMPLETE.  REPLACED ALL
    CORRODED PARTS.  ASSEMBLED EXHAUST HSG AND INSTALLED GEARCASE.
    INSTALLED POWERHEAD ASSY.  STARTED AND RAN MOTOR IN TANK.
    CHECKED OPERATION, GOOD.  INSPECTED FOR LEAKS OF OIL, WATER OR
    FUEL, NONE.

| Part Number | Description | Bin | Qty | Price | Ext Price |
|---|---|---|---|---|---|
| 69J-41134-A0-00 | GASKET, EXHAUST MAN | | 1 | 1.80 | 1.80 |
| 69J-41138-00-00 | SEAL, EXT. 1 | | 1 | 1.40 | 1.40 |
| 69J-45123-00-00 | GASKET, MUFFLER | | 1 | 2.05 | 2.05 |
| 69J-13411-00-00 | STRAINER, OIL | | 1 | 11.35 | 11.35 |
| 69J-14711-00-9S | MUFFLER 1 | | 1 | 45.70 | 45.70 |
| 69J-15311-10-CA | OIL PAN | | 1 | 122.30 | 122.30 |
| 69J-15312-01-00 | GASKET, OIL PAN | | 1 | 10.70 | 10.70 |
| 69J-41135-A0-00 | GASKET, EXHAUST MAN | | 1 | 5.00 | 5.00 |
| 69J-45127-00-00 | SEAL | | 1 | 1.00 | 1.00 |
| 69J-45181-10-9S | PLATE | | 1 | 25.30 | 25.30 |
| 6S1-41136-00-00 | GASKET, EXHAUST MAN | | 1 | 4.75 | 4.75 |
| 99999-03928-00 | MANIFOLD, EXT. 1 | | 1 | 102.50 | 102.50 |
| 69J-13415-00-00 | SEAL, OIL STRAINER | | 1 | 10.40 | 10.40 |
| 69J-41137-02-CA | GUIDE, EXHAUST | | 1 | 166.30 | 166.30 |
| 69J-45113-00-00 | GASKET, UPPER CASIN | | 1 | 12.95 | 12.95 |
| 99999-03568-00 | MANIFOLD, EXHAUST | | 1 | 40.10 | 40.10 |
| | | | | **Material:** | **563.60** |

| Date | | Description | | Hours | Price |
|---|---|---|---|---|---|
| 11/08/2011 | 203 | Labor JMS | | 3.50 | 437.50 |
| | | | | **Labor:** | **437.50** |
| | | | | **Subtotal:** | **$1001.10** |

| | | | |
|---|---|---|---|
| **Date Brought In:** | 10/17/2011 | **Total Material:** | **$1250.60** |
| **Date Promised :** | 10/24/2011 | **Total Labor:** | **$1500.00** |
| **Date Completed :** | **11/08/2011** | **9.500% Tax:** | **$261.31** |
| | | **Total Amount:** | **$3011.91** |

# EXHIBIT C



BONNETT FAIRBOURN
FRIEDMAN & BALINT PC

JERRY C. BONNETT
FRANCIS J. BALINT, JR.
C. KEVIN DYKSTRA
ANDREW Q. EVERROAD
JONATHAN S. WALLACK
CHRISTINA L. BANNON
WILLIAM F. KING
ANDREW M. EVANS
KEVIN R. HANGER

WILLIAM G. FAIRBOURN
VAN BUNCH
ELAINE A. RYAN
KATHRYN A. HONECKER
GUY A. HANSON
MANFRED P. MUECKE[1]
TONNA K. FARRAR[2]
TY D. FRANKEL
ERIC D. ZARD

ANDREW S. FRIEDMAN
ROBERT J. SPURLOCK
WENDY J. HARRISON
PATRICIA N. SYVERSON
KIMBERLY C. PAGE
TODD D. CARPENTER[1]
T. BRENT JORDAN[3]
LINDSEY M. GOMEZ

MICHAEL N. WIDENER, Of Counsel

[1] Admitted Only in California
[2] Admitted Only in California, Missouri
    and Kansas
[3] Admitted Only in Pennsylvania

July 15, 2013

**VIA REGISTERED MAIL (RETURN RECEIPT)**
Yamaha Motor Co. Ltd.
2500, Shingai, Iwata
Shizuoka 438-8501
Japan

**VIA CERTIFIED MAIL (RETURN RECEIPT)**
**(RECEIPT NO. 7012 3460 0000 7080 8271)**
Yamaha Motor Corporation, USA
6555 Katella Avenue
Cypress, CA 90630

     Re:    Williams v. Yamaha Motor Co. Ltd, et al.

Dear Sirs or Madams:

     Our law firm represents George Williams and all other similarly situated consumers in an action against Yamaha Motor Co., Ltd., and Yamaha Motor Corporation USA ("Yamaha"), requesting certification of a class, and arising out of an inherent design and/or manufacturing defect in Yamaha's first generation, four stroke outboard motors that caused an almost immediate onset of corrosion to internal component parts.

     The corrosion buildup forced owners such as Mr. Williams to undergo significant repair or replacement of the internal corroded parts, even if the engines were properly maintained. Due to the concealed placement of the internal component parts experiencing corrosion, Mr. Williams and similarly situated owners could not have seen the defect prior to the advancement of the corrosion to the stage where performance related symptoms surfaced.

     Based on the inherent defects in the design and/or manufacture of the first generation, four stroke outboards, Yamaha knew or should have known that Yamaha Motor Corporation USA's warranties were being breached and that in order to keep the outboards in operation past the warranty period, owners were incurring unexpected labor and materials costs. However, Yamaha concealed the defect from consumers, failed to warn of the potential safety risk of engine failure associated with the defect, and failed to issue a service bulletin or a general recall.

     The full claims, including the facts and circumstances surrounding these claims, are detailed in the Class Action Complaint seeking equitable and injunctive relief on behalf of Mr.

Williams and the members of a Class of similarly situated owners, a copy of which is enclosed and incorporated by this reference.

Yamaha's failures described above violate California Civil Code §1770(a) under, *inter alia,* the following subdivisions:

(5)  Representing that [the outboard motors] have . . . characteristics, . . . uses [or] benefits. . . which [they do] not have.

* * *

(7)  Representing that [the outboard motors] of a particular standard, quality or grade, . . . if [it is] of another.

See California Civil Code §1770(a).

Yamaha's practices also constitute violations of California Business and Professions Code §17200, *et seq.,* the Magnuson-Moss Warranty Act, state express warranties, and state implied warranties.

While the Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code §1782, we hereby demand on behalf of our client and all others similarly situated that Yamaha immediately correct and rectify this violation of California Civil Code §1770 by conducting a service bulletin or general recall of the defective outboard motors, and offering restitution of repair and replacement costs to all members of the proposed class.

Mr. Williams will, after 30 days from the date of this letter, amend the Complaint pursuant to California Civil Code §1782(d) to include requests for actual damages, punitive damages, attorneys' fees, and costs if a full and adequate response to this letter is not received.

We await your response.

Very truly yours,

Van Bunch, Esq.
T. Brent Jordan, Esq.

Enclosures

EXHIBIT D

MANFRED P. MUECKE (222893)
mmueke@bffb.com
BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone:  (619) 756-7748
Fax: (602) 274-1199

VAN BUNCH
(*To be Admitted Pro Hac Vice*)
vbunch@bffb.com
T. BRENT JORDAN
(*To be Admitted Pro Hac Vice*)
bjordan@bffb.com
BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.
2325 E. Camelback Road, #300
Phoenix, AZ  85016
Telephone:  (602) 274-1100
Fax:   (602) 274-1199

Attorneys for Plaintiff

DEBRA BREWER HAYES
(*To be Admitted Pro Hac Vice*)
dhayes@dhayeslaw.com
CHARLES CLINTON HUNTER
(CA Bar No. 93987)
chunter@rbfirm.net
REICH & BINSTOCK, LLC
4265 San Felipe, Suite 1000
Houston, TX  77027
Telephone: (713) 622-7271
Fax: (713) 623-8724

STEPHEN M. HANSEN
(*To be Admitted Pro Hac Vice*)
LAW OFFICES OF STEPHEN M. HANSEN
1821 Dock St., Unit 103
Tacoma, WA  98402
Telephone: (253) 302-5955

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE WILLIAMS, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>YAMAHA MOTOR CO., LTD. and YAMAHA MOTOR CORPORATION, U.S.A.,<br><br>        Defendants. | Case No.:<br><br>**DECLARATION OF MANFRED P. MUECKE PURSUANT TO CALIFORNIA CIVIL CODE §1780(d)** |

I, Manfred P. Muecke, declare as follows:

1.      I am an attorney with the law firm of Bonnett, Fairbourn, Friedman & Balint,  P.C., counsel of record for Plaintiff in the above-entitled action.  I am admitted to practice in this Court.

2.     Defendant Yamaha Motor Co. Ltd. has done and is doing business in the Central District of California.   Such business includes the marketing, distributing and sale of First Generation Four Stroke Outboards as defined in Plaintiff's Class Action Complaint.

3.     Defendant Yamaha Motor Corporation, U.S.A. is a corporation organized and existing under the laws of the State of California and has its principal place of business in the Central District of California, at 6555 Katella Avenue, Cypress, California 90630.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 15th day of July 2013, at San Diego, California.

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.

MANFRED P. MUECKE (222893)
mmuecke@bffb.com
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone:  (619) 756-7748
Fax:  (602) 274-1199

- 2 -

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Beverly Reid O'Connell and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV13- 5066 BRO (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] Western Division<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] Southern Division<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] Eastern Division<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE WILLIAMS, on behalf of himself and all others similarly situated,<br><br>PLAINTIFF(S)<br><br>v. | CASE NUMBER<br>**CV13- 5066** BRO(VBKx) |
| YAMAHA MOTOR CO., LTD and YAMAHA MOTOR CORPORATION, U.S.A.,<br><br>DEFENDANT(S). | **SUMMONS** |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☐ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Manfred P. Muecke _____, whose address is Bonnett Fairbourn, 600 West Broadway # 900, San Diego, CA 92101 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

JUL 1 5 2013

Clerk, U.S. District Court

**JULIE PRADO**

Dated: _____

By: _____

Deputy Clerk

1154

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

GEORGE WILLIAMS, on behalf of himself and all others similarly situated,

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

YAMAHA MOTOR CO., LTD. and YAMAHA MOTOR CORPORATION, U.S.A.,

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
MANFRED P. MUECKE (222893)
Bonnett Fairbourn Friedman & Balint, PC
600 W. Broadway, Suite 900
San Diego, California 92101    619-756-7748

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes  ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

VIOLATIONS OF MAGNUSON-MOSS FEDERAL WARRANTY ACT 15 U.S.C. §2301, et seq.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☒ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY: Case Number:**   CV13 5066

**AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.**

CV-71 (02/13)                    CIVIL COVER SHEET

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Seattle, Washington |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County - Yamaha Motor Corporation, USA | Yamaha Motor Company, Ltd. - Shizuoka, Japan |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
NOTE: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):**   _[signature]_   DATE: 7/15/2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |