1    MANFRED P. MUECKE (222893)
     mmueke@bffb.com
2    BONNETT, FAIRBOURN,
     FRIEDMAN & BALINT, P.C.
3    600 W. Broadway, Suite 900
     San Diego, California 92101
4    Telephone:  (619) 756-7748

5    VAN BUNCH
     (Admitted Pro Hac Vice)
6    vbunch@bffb.com
     T. BRENT JORDAN
7    (Admitted Pro Hac Vice)
     bjordan@bffb.com
8    BONNETT, FAIRBOURN,
     FRIEDMAN & BALINT, P.C.
9    2325 E. Camelback Road, #300
     Phoenix, AZ 85016
10   Telephone:  (602) 274-1100
     Fax:  (602) 274-1199

DEBRA BREWER HAYES
(Admitted Pro Hac Vice)
dhayes@dhayeslaw.com
REICH & BINSTOCK, LLC
4265 San Felipe, Suite 1000
Houston, TX 77027
Telephone: (713) 622-7271
Fax: (713) 623-8724

STEPHEN M. HANSEN
(To be admitted Pro Hac Vice)
LAW OFFICES OF STEPHEN M.
HANSEN
1821 Dock St., Unit 103
Tacoma, WA 98402
Telephone: (253) 302-____

11   Attorneys for Plaintiffs

12

13            **UNITED STATES DISTRICT COURT**

14            **CENTRAL DISTRICT OF CALIFORNIA**

15

16 GEORGE WILLIAMS, LORENDA
     OVERMAN, GERALD
17 CHIARIELLO II, CHARLES
     PENCINGER and STEVE
18 OETEGENN, on behalf of themselves
     and all others similarly situated,

19        Plaintiff,

20 v.

21 YAMAHA MOTOR CO., LTD. and
     YAMAHA MOTOR
22 CORPORATION, U.S.A.,

23        Defendants.

24

25

26

27

28

Case No.: 2:13-cv-05066-BRO-VBK

**AMENDED CLASS ACTION COMPLAINT FOR:**

1.   VIOLATIONS OF MAGNUSON-MOSS FEDERAL WARRANTY ACT 15 U.S.C. §2301, et seq.
2.   BREACH OF STATE EXPRESS WARRANTIES
3.   BREACH OF STATE IMPLIED WARRANTIES
4.   VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT Civil Code § 1750, et seq.; and
5.   VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, Business and Professions Code §17200 et seq.
6.   VIOLATION OF MASSACHUSETTS CONSUMER PROTECTION ACT;
7.   VIOLATION OF NEW YORK GENERATION BUSINES LAW SECTION 349;

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8.   **VIOLATION OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT; and**

9.   **VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT**

**DEMAND FOR JURY TRIAL**

Plaintiffs George Williams, Lorenda Overman, Gerald Chiariello II, Charles Pencinger and Steve Oetegenn, on behalf of themselves and all others similarly situated, by their undersigned attorneys, allege as follows:

1.  This is a class action brought by Plaintiffs, on behalf of themselves and other similarly situated persons, against Yamaha Motor Co., Ltd. ("YMC") and Yamaha Motor Corporation, U.S.A. ("YMUS") (collectively "Defendants" or "Yamaha").  Plaintiffs seek damages and equitable remedies for themselves and the Class (defined in ¶95, below).

2.  As described below, an inherent design and/or manufacturing defect in Defendants' Yamaha four stroke outboard motors – specifically, first-generation four stroke F-Series outboards ("First Generation Four Stroke Outboards") - caused an almost immediate onset of corrosion to internal component parts, which gradually worsened.  The corrosion buildup forced owners such as Plaintiffs, to avoid eventual engine problems and failure, to undergo significant repair or replacement of the internal corroded parts typically after 500 to 700 hours of use, even if the engines were properly serviced and maintained.  As a result, the First Generation Four Stroke Outboards were rendered unfit for their intended use and purpose.

3.  Because of the inherent defect in design and/or manufacture of Yamaha's First Generation Four Stroke Outboards, corrosion buildup would begin right away, although due to the concealed placement of the internal component parts

experiencing corrosion, Plaintiffs and other similarly situated owners could not have seen or performed a visual inspection that would have revealed the defect prior to the advancement of the corrosion to the stage where performance related symptoms surfaced.

4.   Further, based on inherent defects in the design and/or manufacture of the First Generation Four Stroke Outboards, Defendants knew or should have known that their warranties, issued by Defendant YMUS, were being breached by the nearly immediate onset and buildup of corrosion on internal component parts. Defendants knew or should have known that in order to keep the outboards in use after the warranty period, Plaintiffs and the Class would be forced to replace the internal corroded parts and thereby incur not just the cost of the replacement parts, but also significant labor costs.   Defendants concealed these facts from Class members, including Plaintiffs.   Further, Defendants also failed to warn consumers such as Plaintiffs of the potential danger and safety risk of a sudden and catastrophic engine failure brought on by the buildup of corrosion in the defective engines.

5.   Defendants' failure to disclose this defect about which it knew or should have known constitutes both an actionable misrepresentation and an unfair, unlawful, fraudulent, and deceptive business practice.

6.   Plaintiffs and other Class members have been damaged by Defendants' concealment and non-disclosure of the defective condition of the First Generation

Four Stroke Outboards, because they were misled into purchasing outboard motors of a quality and value different than they were promised, and/or have been forced into paying repair and replacement costs that they would not have otherwise paid.

7.   Despite timely demand, to date Defendants and their agents have been unable or unwilling to fully repair and/or offer replacement parts or replacement of the defective outboard motors.

8.   As a result of Defendants' practices, Plaintiffs and the other Class members have suffered injury in fact, including economic damages.

9.   Plaintiffs therefore bring this action on behalf of themselves and a proposed Class of similarly situated purchasers of Yamaha's First Generation Four Stroke Outboards.

## JURISDICTION AND VENUE

10. Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. §1332 because the proposed Class consists of 100 or more members and the aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of costs and interest.   Additionally, at least one Class member is a citizen of a State different than Defendants.

11. Venue is proper in this District pursuant to 28 U.S.C. §1391 inasmuch as the unlawful practices are alleged to have been committed in this District, Defendant Yamaha Motor Corporation, U.S.A. has its principal place of business in this District, and Defendants regularly conduct business in this District.

## PARTIES

12. During all times relevant to this suit, Plaintiff, George Williams, has been a resident of the State of Washington, and currently resides in Seattle, Washington.

13. During all times relevant to this suit, Plaintiff Lorenda Overman has been a resident of the State of North Carolina, and currently resides in Goldsboro, North Carolina.

14. During all times relevant to this suit, Plaintiff Gerald Chiariello II has been a resident of the State of New York, and currently resides in Glen Cove, New York.

15. During all times relevant to this suit, Plaintiff Charles Pencinger has been a resident of the Commonwealth of Massachusetts, and currently resides in Rowley, Massachusetts.

16. During all times relevant to this suit, Plaintiff Steve Oetegenn has been a resident of the State of California, and currently resides in San Marcos, California.

17. Defendant Yamaha Motor Co., Ltd. ("YMC") is a Japanese corporation whose principal place of business is in Shizuoka, Japan and which has at all times material hereto transacted substantial business within the United States and within the State of California.

18. Defendant Yamaha Motor Corporation, U.S.A. ("YMUS") operates as a wholly-owned subsidiary of Defendant YMC for the importing and marketing of Yamaha Motor products.  YMUS is a corporation organized and existing under the

4

laws of the State of California and has its principal place of business at 6555 Katella Avenue, Cypress, California 90630.

19. Defendants, and each of them, were the agents or employees of each other and were acting at all times within the course and scope of such agency and employment and contributed to and caused the breaches and other liabilities as alleged herein, and are legally responsible because of their relationship with their co-Defendants for the relief and recovery sought by Plaintiffs and the members of the Class.

20. Defendants, and each of them, were the manufacturers, designers, developers, processors, producers, assemblers, builders, testers, inspectors, wholesalers, retailers, sellers and distributors of the First Generation Four Stroke Outboards.

**TOLLING OF THE STATUTE OF LIMITATIONS**

21. Plaintiffs and the members of the Class could not have discovered through the exercise of reasonable diligence that their First Generation Four Stroke Outboards were defective within the time period of any applicable statute of limitations.  Among other things, due to the concealed placement of the internal parts experiencing corrosion, Plaintiffs did not and could not have performed a visual inspection that would have revealed the defect, nor is it reasonable to presume that any member of the Class could have performed such a visual inspection.

22. Any applicable statute of limitations that might otherwise apply to bar any of Plaintiffs' claims or the class of the other Class members is tolled by Defendants' concealment of its defective design and/or manufacture of the First Generation Four Stroke Outboards.   As a result of Defendants' concealment, neither Plaintiffs nor the other Class members could have discovered the defects through the exercise of reasonable diligence, until the earlier of the time the repairs and/or replacement of component parts became necessary or when the engines suffered failure due to the corrosion of internal component parts.

**COMMON FACTS**

23. At all relevant times herein, Defendants have developed, manufactured, marketed, sold and distributed outboard motors under the Yamaha brand name throughout the United States through YMUS's central offices in Cypress, California.

24. Beginning as early as with models introduced on or around the year 2000, Defendants have marketed, sold and distributed First Generation Four Stroke Outboards to purchasers in the United States through the central offices of YMUS located in California.

25. On information and belief, Defendants phased out the First Generation Four Stroke Outboards with the introduction of next generation models manufactured in or around 2005.

26. All First Generation Four Stroke Outboards were sold with a three-year warranty from Defendant YMUS with identical or nearly identical operative language.  The three-year warranties issued by YMUS guaranteed that the outboard motors would be "free from defects in material and workmanship" for the duration of the warranty, and covered the costs of parts and labor for major components for the full term of the warranty.  The YMUS warranty contained general exclusions for types of damage which do not apply to the damage suffered by Plaintiffs and the members of the Class.

27. The First Generation Four Stroke Outboards have latent defects that are inherent within the motors themselves and/or the result of design or manufacturing flaws which result in an almost immediate onset of corrosion to internal dry exhaust component parts during the warranty period, which gradually worsened.

28. The component parts affected by the defect are found on the "dry" side of the exhaust cavities of the outboard engines, which is not exposed directly to water.  This area, the "dry" side, is separate from where water passages exist by design to allow water through to reduce heat and keep the engine cool.

29. Proper maintenance, servicing and storage during the warranty period, however, would not detect the internal dry side exhaust corrosion problem.  On information and belief, authorized Yamaha dealers and/or repair technicians performing servicing of the First Generation Four Stroke Outboards in accordance with Yamaha service manual guidelines, were not told to inspect for corrosion in

internal dry exhaust components during annual maintenance checks, as might allow for the corrosion problems to be identified while the outboards were still covered under the stated terms of the written warranty.

30. Thus, the hidden buildup of corrosion would not be discovered, even by trained mechanics performing annual service checks, until the engines actually began to evidence symptoms such as leaking oil, giving the mechanic a reason to open up the engine, and thereby exposing the corrosion damage.

31. As a number of affected owners have reported, an external examination and even scoping of the exhaust tubes cannot detect the internal corrosion, severe as it is.  Absent disassembly of the engine and removal of the power heads, the internal corrosion to the exhaust components cannot be visually detected.

32. Instead, after only approximately 500 to 700 hours of use, the outward signs and tell-tale symptoms became so manifest that the corrosion issue with hidden internal parts was flagged, necessitating the repair and/or replacement of component parts. Since most recreational boat owners use their outboard motors less than 100 hours per year, the signs of engine failure did not show until after the term of the three year written warranty.

33. YMUS' limits on its express warranty are unenforceable and the warranty unconscionable because Defendants, acting in unison and as agents of one another, knowingly sold and distributed a defective product without

8

conspicuously informing consumers about the defect.  Plaintiffs and the members of the Class did not receive the goods expressly warranted by YMUS.

34. The time limits contained in YMUS' written warranties are also unconscionable and grossly inadequate to protect Plaintiffs and the members of the Class.   Among other things, Plaintiffs and the members of the Class had no meaningful choice in determining those time limitations.   Further, the time limitations of the warranties unreasonably favored YMUS over Plaintiffs and the members of the Class, given the fact that while corrosion began to develop almost immediately after purchase and gradually worsened, the problems only became manifest and noticeable after 500 to 700 hours of use, and most recreational boat owners use their outboard motors less than 100 hours per year.  Finally, the time limitations are unconscionable because Defendants knew or should have known that the First Generation Four Stroke Outboards were defective at the time of sale, but would fail well before their useful lives, thereby rendering the time limitations insufficient, inadequate and unconscionable.

35. By marketing, selling and distributing First Generation Four Stroke Outboards to purchasers in the United States, Defendants made actionable statements that the outboards were free of defects in their design and/or manufacture, and that they were safe and fit for their ordinary intended use and purpose.   On information and belief, Defendants also represented that the First

Generation Four Stroke Outboards were "high power" model engines and that the Yamaha brand was respected for "unmatched reliability and durability."

36. By marketing, selling and distributing First Generation Four Stroke Outboards to purchasers in the United States, Defendants made actionable statements that the ordinary use of the outboards would not involve undisclosed safety risks.  Further, Defendants concealed what they knew or should have known about the safety risks resulting from the material defects in design and/or manufacture.

37. Additionally, in marketing, selling and distributing First Generation Four Stroke Outboards to purchasers in the United States, Defendants concealed or failed to disclose to these purchasers, including Plaintiffs and the Class members, that in order to keep the outboards in use after the warranty period, extraordinary repair or replacement costs would be required.

38. Defendants engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and misleading, and with the intent that consumers rely upon such concealment, suppression and omissions.  Alternatively, Defendants were reckless in not knowing that these representations were false and misleading at the time they were made.  Defendants obviously had exclusive access to data and research conducted prior to the design and manufacture of the outboards.

39. Repair or replacement of corroded parts in First Generation Four Stroke Outboards involves significant cost and expense to consumers such as Plaintiffs and the other members of the Class. Further, once the corrosion problems were detected, some consumers incurred the premature expense of purchasing a new outboard engine, rather than paying the prohibitive cost of repairs (in some cases, owners reported being faced with repair estimates totaling 50% of the cost of simply abandoning the defective outboard and purchasing a new engine from the dealer). One owner reported in an online post that, faced with severe corrosion to both his twin First Generation Four Stroke Outboards, he spent $34,000 to replace the engines with new ones, discarding the old engines after only 500 hours of use.

## PLAINTIFFS' EXPERIENCES

### Plaintiff George Williams

40. Plaintiff George Williams ("Williams") purchased a boat equipped with a new First Generation Four Stroke Outboard (Yamaha model number F200), from Jacobsen's Marine in Seattle, Washington, one of Defendants' authorized dealers of new Yamaha outboards, on September 6, 2003. Williams used his outboard approximately 650 hours between September 6, 2003 and November 15, 2011, without incident and with regularly scheduled service. Williams otherwise followed all recommended maintenance procedures for his First Generation Four Stroke Outboard engine.

41. After Williams noticed that his boat was leaking oil, he brought the boat in to Jacobsen's Marine for service and inspection on November 15, 2011. On information and belief, Jacobsen's Marine is an authorized Yamaha outboard motor dealer. Williams brought the boat for inspection at Jacobsen's place of business.

42. Williams was told he needed replacement of his oil pump on his outboard engine. When the mechanic took the head of the engine off to begin the oil pump replacement, he discovered severe corrosion damage to internal engine components. In the end, Williams paid a repair invoice in the total amount of $3,011.91, which included a $1,001.10 charge for parts and labor incurred to replace the corroded engine oil pan, exhaust manifold, and other component parts. Regarding the $1,001.10 charge to Williams related to the corrosion, the service technician detailed the repair work as follows:

> FOUND CORROSION ON OIL PAN AND EXHAUST PARTS. REMOVED GEARCASE AND DISASSEMBLED EXHAUST HSG COMPLETE. REPLACED ALL CORRODED PARTS. ASSEMBLED EXHAUST HSG AND INSTALLED GEARCASE. INSTALLED POWERHEAD ASSY. STARTED AND RAN MOTOR IN TANK. CHECKED OPERATION, GOOD. INSPECTED FOR LEAKS OF OIL, WATER OR FUEL, NONE.

See Exhibit B.

**Plaintiff Lorenda Overman**

43. Plaintiff Lorenda Overman ("Overman") purchased a new Yamaha F225 TXRD First Generation Four Stroke Outboard, from one of Defendants' authorized dealers on February 3, 2005. Overman used her outboard approximately 512 hours

12

between 2005 and 2011 without incident and with regularly scheduled service, following recommended maintenance procedures.

44. In September 2011, while at sea nearby the Cape Lookout Lighthouse near Core Banks, North Carolina, without warning, her F225 engine started to overheat and promptly failed.  Overman and her guests were rescued at sea and towed back to shore.

45. Overman brought her boat and failed F225 outboard engine for service to 70 West Marina, in Morehead City, North Carolina. 70 West Marina is an authorized Yamaha outboard motor dealer.  70 West Marina immediately contacted Yamaha about the problem, but was told that the warranty had expired on Overman's outboard motor.

46. At 70 West Marina, upon removing the power head and the lower unit, Overman's mechanic discovered corrosion to internal components including a "rotten" exhaust tuner and a hole in the exhaust housing.

47. On October 20, 2011, Overman paid her final total repair bill related to the corrosion problem and engine failure in the amount of $3,118.44.  Overman was also deprived of the use of her boat for an extended period of time in the Fall of 2011 as a result of the failure and substantial repairs.

48. Overman later communicated with Defendants in an effort to get relief for the engine failure and corrosion related repairs, but after requesting repair

records from Overman in June 2013, Yamaha has offered no remedy and has not returned Overman's voicemail messages.

### Plaintiff Gerald Chiariello II

49. Plaintiff Gerald Chiariello II ("Chiariello") purchased a new Yamaha F225 TXRD First Generation Four Stroke Outboard on May 6, 2006, from Great Oak Marina in St. James, New York, one of Defendants' authorized dealers. Chiariello's outboard engine was a model year leftover and was a first-generation model manufactured in 2004 before Defendants' design change, and according to its Certificate of Origin, was first transferred to a Yamaha distributor for sale on August 19, 2004.

50. Chiariello used the outboard approximately 380 hours between May 2006 and March 2012, and had the engine serviced regularly and followed all recommended maintenance procedures, exclusively using Yamaha parts and fluids.

51. After hearing on the internet about widespread dry exhaust corrosion problems with First Generation Four Stroke Outboards, while performing a water pump change, Chiariello removed the lower unit himself and examined his engine with the aid of a bore scope and camera.  With the disassembly of the lower unit and with the aid of these tools, Chiariello was able to detect several areas of complete corrosion all the way through the exhaust chamber.

52. Chiariello had an inspection conducted at Alhambra Marine, an authorized Yamaha dealer in Seaford, New York.  After an examination confirmed

14

the rampant corrosion to the dry exhaust chamber, Chiariello had the F225 outboard repaired at a total cost of $2,574.88.

53. Chiariello wrote a letter to Yamaha explaining the corrosion damage and repairs. Defendants and their representatives denied any assistance or relief, taking the position that his engine was no longer covered by the YMUS warranty.

### Plaintiff Charles Pencinger

54. Plaintiff Charles Pencinger ("Pencinger") was not the original purchaser of his First Generation Four Stroke Outboards, but purchased two outboards, specifically a 2003 F225 TXRB model and a LF225TXRB model, in September 2010.

55. At all times, Pencinger had the outboards regularly serviced and maintained, consistent with Yamaha's recommendations

56. Like Chiariello, Pencinger reviewed an internet discussion of widespread dry exhaust corrosion problems with First Generation Four Stroke Outboards. Although no corrosion was outwardly visible without disassembly of the engine, and although there had been no prior warning signs that his engine was suffering from corrosion, Pencinger concluded based on the internet chatter about Yamaha's problem with First Generation Four Stroke Outboards that he needed to perform a closer inspection.

57. In March 2013, Pencinger opened up his outboard engine by dropping the lower units, and thus was able to perform an internal inspection.

58. With the dropping of the lower units, Pencinger discovered severe internal corrosion to the dry exhaust chambers, and promptly took the engine in for service and inspection.

59. In April 2013, Pencinger had the two F225 engine repaired for a total cost of $3,908.63.

60. Pencinger attempted to seek relief from Yamaha and spoke with one of Defendants' representatives; however, he was informed that his motors were out of warranty and that there was nothing Yamaha would do for him.

**Plaintiff Steve Oetegenn**

61. Plaintiff Steve Oetegenn ("Oetegenn") was not the original purchaser of his First Generation Four Stroke Outboards, but purchased two 2004 model outboards in 2006.

62. Oetegenn requested and received a change of registration on YMUS's extended warranties on the outboards, which transferred the extended warranties to Oetegenn as a subsequent purchaser.

63. At all times, Oetegenn had the outboards regularly serviced and maintained, consistent with Yamaha's recommendations.

64. In 2012, during a sea trial while Oetegenn was about to close the sale of his boat, one of his outboard engines began to emit smoke. Oetegenn took the boat to be serviced and was told that both engines had suffered severe corrosion to the dry exhaust components and that a repair would cost up to $20,000, as the

corrosion was so severe that repair would require the extreme measure of replacement of the power heads.

65. At the time of the discovery of the corrosion, Oetegenn's First Generation Four Stroke Outboards had only 500 hours of use.

66. Rather than undergo the $20,000 repair on the outboards, Oetegenn elected on May 30, 2012, to purchase two new F225 outboards at a total cost of $31,337.62.

67. Oetegenn wrote two letters to Yamaha to request assistance, but no relief was forthcoming. Defendants and their representatives contended that because his engines were out of warranty after the extended warranties expired, the company would not help him.

## ADDITIONAL COMMON FACTS

68. Plaintiffs were not alone in experiencing rampant corrosion in their First Generation Four Stroke Outboards or in incurring significant repair costs. As was reported in a story published in the October/November 2012 edition of BoatUS Magazine (the "BoatUS Magazine article"), the unusual corrosion problems specifically among First Generation Four Stroke Outboards led to a series of complaints with BoatUS's Consumer Protection Bureau. Plaintiffs' experiences with corrosion were typical of the commonly reported problems.

69. As the BoatUS Magazine article reports, First Generation Four Stroke Outboards have repeatedly manifested the specific problem that after 500 to 700

hours of use, the engine's exhaust gases corrode the exhaust tube and sometimes also the engine's oil pan, which is in the same area.  The BoatUS Magazine article quotes an interview with a marine surveyor:  "I've seen the damage to six engines myself, and know of least a dozen others in the New Jersey area."

70. The same surveyor told BoatUS Magazine that the failure not wa*s **not outwardly visible***.  This is entirely consistent with Plaintiffs' experiences as related above, as the dry exhaust corrosion problem was not visible to them absent the disassembly of their outboard engines.  According to the surveyor, the engine may lose power and begin to smoke, and in some cases, the oil dipstick can be blown out of the engine from the exhaust gas pressure.

71. BoatUS Magazine reported that a marine surveyor in Massachusetts inspected three ruined First Generation Four Stroke Outboards and determined that because the corrosion happened internally, and to the dry side of the exhaust where no cooling water is present, then flushing procedures would have no effect on the buildup of corrosion.  BoatUS Magazine reported the surveyor to opine that there was ***nothing an owner could have done to prevent serious corrosion from eventually eating through the exhaust system***.  Indeed, flushing only affects the water passages on the "wet" side of the engines, and while effective in getting salt and debris out of these passages, makes no difference to the performance of component parts in the dry exhaust cavities.

72. After publication of the BoatUS Magazine article, on or about March 18, 2013, BoatUS's Director of Consumer Protection announced by email to a group of BoatUS members that BoatUS had been negotiating with Defendants on a "program" to address the corrosion in the First Generation Four Stroke Outboards. According to BoatUS, Defendants agreed to gather information and obtain service records from BoatUS members experiencing a problem, and make a determination on a case-by-case basis.

73. Over the ensuing weeks, the BoatUS members exchanged emails with one another regarding their common experiences with problems with First Generation Four Stroke Outboards, their attempts to seek relief from Yamaha, and their participation in the "program" announced as a result of the BoatUS-led negotiations. These BoatUS members are all members of the proposed Class of purchasers of First Generation Four Stroke Outboards located throughout the United States.

74. The BoatUS members exchanging emails reported many instances of expensive repair costs incurred as the result of problems with their First Generation Four Stroke Outboards, including problems as serious as complete engine failure, and experienced with as few as 450 hours of use. The BoatUS members reported spending as much as $10,000 per engine to have repairs completed and necessary component parts replaced. Some owners reported using two outboard engines operating on the same boat, doubling the cost of repairs. They reported similar

19

experiences in that the corrosion occurred even though they had properly maintained the engines including flushing the engines regularly as recommended.

75. The BoatUS members' complaints demonstrate Yamaha's complete failure to provide a satisfactory remedy to resolve the defects or to compensate their customers for their economic losses caused by the defective condition of the First Generation Four Stroke Outboards.

76. As detailed in the email exchanges, one BoatUS member who took advantage of the "program" announced as a result of the BoatUS-led negotiations was offered $700 toward his $5,000 repair cost, which he rejected.  Another member participating in the "program" was denied any assistance at all on his $4,139.65 repair bill. Other members participating in the "program" rejected offers from Defendants amounting to nothing more than an extended warranty only if a new motor was purchased.  Still other members reported that they submitted their information to Yamaha, but did not hear back from them.

77. In short, based on available information, Defendants' "program" did little if anything to correct the problem or remedy the losses of the members of the Class.  This is entirely consistent with Plaintiffs' experiences as related above of seeking relief from Yamaha, but getting nothing in return.

78. Further, many BoatUS members reported being told by Defendants that it disclaimed liability for the defect due to the expiration of their three-year warranties, requiring customers to pay for the repairs or replacement of component

20

parts themselves. Defendants never, however, denied them relief because they were requesting coverage of damages excluded under the terms of the warranties.

79. Aside from the BoatUS email exchanges, the problems with corrosion in First Generation Four Stroke Outboards were also a frequent topic in online forums frequented by boating enthusiasts. As an example, one post at www.yamahaoutboardparts.com detailed dry exhaust corrosion issues developing after only 450 hours of use and which led to a $4,000 repair estimate for parts alone (not including labor), which the customer compared and described as ***"like a young kid needing a 'root canal'."***

80. Other online comments support the fact discussed by the BoatUS members, that the problems with internal corrosion to the dry exhaust internal component parts were not outwardly visible, even to those making inspection with the aid of flashlights, having been made aware of the bad corrosion history of the First Generation Four Stroke Outboards.  Indeed, on numerous occasions, it is consistently reported by owners that the internal corrosion was only visible upon professional disassembly and removal of the power heads.

81. The undisclosed defects are material because neither Plaintiffs nor the members of the Class would have purchased the First Generation Four Stroke Outboards if they had known of the defect.

82. An expensive new outboard engine is not meant to be disposable at the conclusion of the manufacturers' warranty.  Outboard engines, if properly used and

maintained, can and should last for a long time.  Specifically, an outboard engine should perform and function for as many as two thousand hours of use before the engine becomes in need of an overhaul.  Therefore, the presence of a defect which would necessitate a major overhaul or expensive replacement of internal component parts, within 500 to 700 hours of use, is material information to consumers.

83. A reasonable consumer would not expect the onset of serious corrosion relatively early in the useful life of the motors, with the motors being properly maintained.  This is true regardless of the durational period of any written warranty.  To enjoy the outboard engine for its intended use, a consumer would not expect to have to incur very expensive repair and replacement costs in order to be able to use the outboards beyond the durational period of the written warranty and after as few as 500 hours of use.

84. The internal component parts reported to have suffered widespread problems with corrosion, including the engine oil pan and exhaust tubes, are integral to the operation of the engines.  The severe corrosion of internal parts and components such as the engine oil pan and the exhaust tubes leads to increased risk of total engine failure while on the water or at sea. Indeed, without correction, the damage to internal parts caused by the corrosion would ultimately lead to inevitable engine failure while on the water or at sea.

85. The widely reported problems with severe corrosion to internal dry exhaust components in the First Generation Four Stroke Outboards is not believed to be salt-water related.   On information and belief, the severe corrosion was experienced by owners who used their boats on fresh water as well as those who used their boats at sea.

86. Based on the increased risk of engine failure alone, the First Generation Four Stroke Outboards purchased by all Class members were worth less than the purchase price that was paid.

87. The possibility of a complete engine failure while at sea is a serious known safety risk for boat operators.   Because of the latent undisclosed defects, Plaintiffs and the other members of the Class unknowingly took additional safety risks from use of the First Generation Four Stroke Outboard motors.   Plaintiffs and the Class expressly disclaim any recovery for physical injury flowing from accidents caused by corrosion to the Yamaha outboard motors at issue. Nevertheless, the increased safety risk they took is an obvious consequence of Defendants' defective design and serves as an independent justification for the relief sought by Plaintiffs and the Class.

88. On information and belief, second generation or next-generation high powered four stroke outboard motors were introduced by Defendants on or around 2005.

89. On information and belief, second generation or next-generation high powered four stroke outboard motors manufactured, marketed and sold by Defendants from around 2005 onward had a design change which corrected the defect and as a result, the problems with massive corrosion to internal components with four stroke motors ceased to exist and was no longer an issue for Yamaha or for their customers.

90. On information and belief, the design change introduced in 2005 dealt with the materials used in coating the dry exhaust cavities, and/or the methods by which Defendants apply the coating to the internal cooling passages of the high powered four stroke outboard motors.  One affected owner went online to describe new F225 replacement parts he had seen, which he described as having on it "a coating like a frying pan . . . that the old one never had."  Another online comment from an owner who was sent replacement exhaust manifold parts identified a new coating which appeared on the replacement parts, which was described as appearing "on all the surfaces (internal and external)" and that it was "similar to Teflon."

91. The development and implementation of the design change to the second or next generation of high powered four stroke outboard motors (and the replacement parts provided for damaged First Generation Four Stroke Outboards) without remedying the known problems with the First Generation Outboards demonstrates Defendants' knowledge or recklessness with regard to the extensive

corrosion problem experienced by purchasers of First Generation Four Stroke Outboards.

92. By coating the new parts differently, and by coating the internal components of the next generation or second generation four stroke motors differently, Defendants have admitted that there is a defect with the First Generation Four Stroke Outboards.  However, Defendants have not publically acknowledged the problem, have remained silent in hopes that the problem would quietly disappear, have not issued a service bulletin to fix the defective parts, have not instituted a recall of the defective products, and have not financially compensated the purchasers of the defective products or otherwise remedied the problems experienced by their customers in any meaningful way.

## **CLASS ALLEGATIONS**

93. Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

94. As detailed herein, Plaintiffs bring this action on their own behalf and on behalf of a Class and/or Subclasses under Rules 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

95. The Class is defined as:

> All residents of the United States, or residents in such states as the Court determines to be appropriate, who purchased one or more First Generation Four Stroke Outboards.

96. The following alternative Subclasses are defined as:

All California residents (and residents of such additional states as the Court determines to be appropriate) who purchased one or more First Generation Four Stroke Outboards.

All Massachusetts residents (and residents of such additional states as the Court determines to be appropriate) who purchased one or more First Generation Four Stroke Outboards (the "Massachusetts Subclass").

All New York residents (and residents of such additional states as the Court determines to be appropriate) who purchased one or more First Generation Four Stroke Outboards (the "New York Subclass").

All North Carolina residents (and residents of such additional states as the Court determines to be appropriate) who purchased one or more First Generation Four Stroke Outboards (the "North Carolina Subclass").

All Washington residents (and residents of such additional states as the Court determines to be appropriate) who purchased one or more First Generation Four Stroke Outboards (the "Washington Subclass").

97. Excluded from the Class and the Subclasses, but only to the extent that the Class and/or the Subclasses assert claims for breach of state express and implied warranties and/or claims under the Magnuson-Moss Warranty Act, are non-registered purchasers ineligible for warranty coverage because (a) they are an original purchaser but did not register their purchase with Yamaha, or (b) they are a subsequent purchaser but did not properly transfer the warranty by registering the transfer with Yamaha.  These non-registered purchasers will be readily identifiable simply by their absence from Defendants' registration records.

98. Also excluded from the Class and the Subclasses are individuals who have claims for personal injury resulting from failure of Yamaha outboard motors.

99. Also excluded from the Class and the Subclasses are Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which Defendants have

a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; any Judge to whom this case is assigned as well as his or her immediate family and staff; and anyone who purchased First Generation Four Stroke Outboard motors for resale.

100.    Plaintiffs reserve the right to amend or modify the Class definitions in connection with a motion for class certification or with the result of discovery.

101.    This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Federal Rule of Civil Procedure 23.

102.    Plaintiffs do not know the exact size or identities of the proposed Class, however, Plaintiffs believe that the Class encompasses many thousands or tens of thousands of individuals who are dispersed geographically throughout the United States.  Therefore, the proposed Class is so numerous that joinder of all members is impracticable.  Class members may be notified of the pendency of this action by mail and/or electronic mail, supplemented if deemed necessary or appropriate by the Court by published notice.

103.    There are questions of law and fact that are common to the Class, and predominate over any questions affecting only individual members of the Class. The damages sustained by Plaintiffs and the other members of the Class flow from the common nucleus of operative facts surrounding Defendants' misconduct.  The common questions include, but are not limited to the following:

27

a.   whether  Defendants failed to comply with their express and implied warranties;

b.   whether the limits on Defendant YMUS' express warranty are enforceable;

c.   whether Defendants provided Plaintiffs and the other Class members with an outboard motor with defective design and/or manufacture which led to premature onset of corrosion;

d.   whether Plaintiffs' and the Class members' outboard motors have a lower market value as a result of the defective design and/or manufacture;

e.   whether Defendants knew or should have known of the defective design and/or manufacture;

f.   whether the defective design and/or manufacture constitute material facts to purchasers of the First Generation Four Stroke Outboards;

g.   whether Defendants have a duty to disclose the defective nature of the outboard motors;

h.   whether the defective design and/or manufacture leads to premature onset of corrosion in the First Generation Four Stroke Outboards;

i.   whether the defective design and/or manufacture leads to increased damage to other component parts, engine failure, and associated safety risks;

j.    whether Defendants have engaged in unlawful, unfair or fraudulent business practices;

k.    whether Defendants have engaged in unfair or deceptive acts or practices;

l.    whether Plaintiffs and the other Class members are entitled to equitable relief, including but not limited to restitution or injunctive relief;

m.    whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

104.    Plaintiffs' claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class in that both the Plaintiffs and the other members of the Class purchased First Generation Four Stroke Outboards with the same defective design and/or manufacture.

105.    Plaintiffs will fairly and adequately represent the interests of the Class.  They are committed to the vigorous prosecution of the Class' claims and have retained attorneys who are qualified to pursue this litigation and are experienced in class action litigation.

106.    A class action is superior to other methods for the fair and efficient adjudication of this controversy.  While substantial, the damages suffered by each individual Class member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants'

conduct.  Further, it would be virtually impossible for the members of the Class to individually and effectively redress the wrongs done to them.   A class action regarding the issues in this case does not create any problems of manageability. The class action device presents far fewer management difficulties than alternative methods of adjudication, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

107.   In the alternative, the Class may be certified because:

   i.   the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

   ii.  The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede the ability to protect their interests; and

   iii. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## COUNT I

**VIOLATIONS OF MAGNUSON-MOSS FEDERAL WARRANTY ACT**
**15 U.S.C. §2301, et seq.**
**(On Behalf of Plaintiffs Williams, Overman, Chiariello,**
**Oetegenn and the Class)**

108.    Plaintiffs Williams, Overman, Chiariello and Oetegenn repeat and re-allege every allegation above as if set forth herein in full.

109.    Yamaha's First Generation Four Stroke Outboards constitute "consumer products," as defined in 15 U.S.C. §2301.

110.    Plaintiffs Williams, Overman, Chiariello and Oetegenn and the other Class members are "consumers," as defined in 15 U.S.C. §2301.

111.    Defendants are "suppliers" of the First Generation Four Stroke Outboards as defined in 15 U.S.C. §2301.

112.    Defendant YMUS is a "warrantor" as defined in 15 U.S.C. §2301.

113.    Defendant YMUS supplied a "written warranty" regarding their First Generation Four Stroke Outboards, as defined in 15 U.S.C. §2301(6).

114.    As suppliers and in connection with the sale of First Generation Four Stroke Outboards, Defendants made "implied warranties" arising under State law regarding their First Generation Four Stroke Outboards, as defined in 15 U.S.C. §2301(7).

115.    The warranties made by Defendants pertained to consumer products costing the consumer more than five dollars, see 15 U.S.C. §2302(e).

31

116.    Plaintiffs Williams, Overman, Chiariello and Oetegenn invoke federal jurisdiction for their claims stated under this Count pursuant to the Class Action Fairness Act.

117.    Defendants violated the Magnuson-Moss Federal Warranty Act by their failure to comply with the express and implied warranties  they made to Plaintiffs and other Class members.  See 15 U.S.C. §2301, et seq.

118.    Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the Magnuson-Moss Federal Warranty Act claims in this Count, whether premised upon express or implied warranty, is procedurally and substantively unconscionable under federal law and the applicable state common law.

119.    Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims in this Count is tolled under equitable doctrines.

120.    Plaintiffs Williams, Overman, Chiariello and Oetegenn, and the other Class members, sustained injuries and damages as a proximate result of Defendants' violation of their written and/or implied warranties, and are entitled to legal and equitable relief against Defendants, including economic damages, rescission or other relief as appropriate.

# COUNT II

## BREACH OF STATE EXPRESS WARRANTIES
### (On Behalf of Plaintiffs Williams, Overman, Chiariello, Oetegenn and the Washington, North Carolina, New York and California Subclasses)

121.    Plaintiffs Williams, Overman, Chiariello and Oetegenn repeat and re-allege every allegation above as if set forth herein in full.

122.    Defendants' actions, as complained of herein, violate state express warranty statutes in the States of Washington (Wa. Ann. 62A.2-313), North Carolina (N.C. Gen. Stat. Ann. §25-2-313), New York (N.Y. U.C.C. Law §2-313) and California (California Commercial Code §2313).  This Count is thus brought collectively on behalf of the Washington, North Carolina, New York and California Subclasses, and is intended to be repeated individually for each of the Subclasses as necessary.

123.    Defendants, acting in unison and as agents of one another, marketed and sold and distributed First Generation Four Stroke Outboards to Plaintiffs Williams, Overman, Chiariello and Oetegenn and the members of the respective state Subclasses in the regular course of their business.

124.    Defendants expressly represented and warranted, by and through statements, descriptions, and affirmations of fact made by Defendants or their authorized agents or sales representatives, that First Generation Four Stroke Outboards were free of defects and were safe for ordinary use on recreational boats.

125.    Further, Defendant YMUS issued a written warranty accompanying Defendants' outboard motors, see Exhibit A hereto, which expressly warranted that the First Generation Four Stroke Outboards were free from defects in materials and workmanship and fit for their intended use.  The written warranty provided that the outboards "will be free from defects in material and workmanship."

126.    In reliance upon said express warranties by Defendants, Plaintiffs Williams, Overman, Chiariello and Oetegenn, and the members of the respective state Subclasses, as referenced in this Count, purchased First Generation Four Stroke Outboards.

127.    Defendants' First Generation Four Stroke Outboards failed to comply with Defendants' express warranties because they suffered from inherent design and/or manufacturing defects which, from the date of purchase forward, rendered the outboards unfit for their intended use and purpose.

128.    When Plaintiffs' First Generation Four Stroke Outboards failed, they were saddled with the full cost of repairs and replacement parts.

129.    Defendants knew or had reason to know that First Generation Four Stroke Outboards did not conform to these express representations because they were neither as safe, nor usable, nor free of defects, as Defendants represented.

130.    The First Generation Four Stroke Outboards purchased by Plaintiffs Williams, Overman, Chiariello and Oetegenn and the members of the respective

state Subclasses, from the date of purchase forward, were not free from defects in material and workmanship.

131.    Defendants' actions, as complained of herein, violate state express warranty statutes in the States of Washington, North Carolina, New York and California.   This Count is thus brought on behalf of the Washington, North Carolina, New York and California Subclasses, as well as other members of the Class who are residents in other states as the Court determines to be appropriate, where the statutes outlining the cause of action for a breach of express warranty are substantially the same, or where similarities of the statutes vastly outweigh any differences in them.

132.    Defendants' breach of their express warranties directly and proximately caused Plaintiffs Williams, Overman, Chiariello and Oetegenn, and the members of the respective state Subclasses, to suffer economic losses, including but not limited to damages at the point of sale in terms of the difference between the value of the defective products as promised and the value of the products as delivered, and also paying for defective products and entering into transactions they would not have entered into but for Defendants' acts.

133.    Based on the facts alleged herein, any durational limitation to the express or implied warranties that would otherwise bar the warranty claims in this Count is procedurally and substantively unconscionable.

134.    Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims in this Count is tolled under equitable doctrines.

135.    Plaintiffs by and through their counsel notified Defendants in writing by certified mail of the particular violations which form the basis of this Count and demanded that Defendants rectify the problems for all affected consumers, including Plaintiffs Williams, Overman, Chiariello, Oetegenn and the members of the respective state Subclasses.  A copy of the letter is attached hereto as Exhibit C. Defendants did not respond to the letter.  In addition, Defendants were on notice of the defects from complaints and service requests it has received from Plaintiffs and other members of the Class, as well as through its own internal investigations as reported in the BoatUS article.

136.    Plaintiffs and the members of the Washington, North Carolina, New York and California Subclasses are entitled to legal, injunctive and equitable relief against Defendants, including damages, injunctive relief including recall and replacement, restitution, attorneys' fees, costs and/or other relief as appropriate.

## COUNT III

### BREACH OF STATE IMPLIED WARRANTIES

**(On Behalf of Plaintiffs Williams, Overman, Chiariello and Oetegenn and the Washington, North Carolina, New York and California Subclasses)**

137.   Plaintiffs Williams, Overman, Chiariello and Oetegenn repeat and re-allege every allegation above as if set forth herein in full.

138.   Defendants' actions, as complained of herein, violate implied warranty of merchantability statutes in the State of Washington (Wa. Ann. 62A.2-314), North Carolina (N.C. Gen. Stat. Ann. §25-2-314), New York (N.Y. U.C.C. Law §2-314)  and California (California Civil Code §1792).  This Count is thus brought collectively on behalf of the Washington, North Carolina, New York and California Subclasses, and is intended to be repeated individually for each of the Subclasses as necessary.

139.   Defendants marketed and sold First Generation Four Stroke Outboards to Plaintiffs Williams, Overman, Chiariello and Oetegenn, and the members of the respective state Subclasses as referenced in this Count, in the regular course of business.

140.   Defendants impliedly warranted that the First Generation Four Stroke Outboards were of merchantable quality, would pass without objection in the trade or business under the contract description, and were free of material defects and fit for the ordinary purposes for which they are used.

141.   The implied warranty included, among other things, a warranty that the First Generation Four Stroke Outboards were safe for use and that they would not be subject to onset of severe corrosion necessitating expensive repair and replacement costs early in their expected useful life.

142.    Defendants as sellers of the First Generation Four Stroke Outboards breached their implied warranties of merchantability by selling Plaintiff and the Class members defective First Generation Four Stroke Outboards that developed problems with severe corrosion early in their expected useful life.   The defect rendered the First Generation Four Stroke Outboards unfit for their ordinary use and purpose.   Defendants have refused to recall, repair or replace, free of charge, the defective outboard motors or their component parts.

143.    The inherent design and/or manufacturing defect in the First Generation Four Stroke Outboards existed when the motors left Defendants' possession and rendered the outboard motors unfit for their intended use and purpose.

144.    Defendants' actions, as complained of herein, violate implied warranty of merchantability statutes in the State of Washington, North Carolina, New York and California.   This Count is thus brought on behalf of the Washington, North Carolina, New York and California Subclasses, as well as other members of the Class who are residents in other states as the Court determines to be appropriate, where the statutes outlining the cause of action for a breach of implied warranty of merchantability are substantially the same, or where similarities of the statutes vastly outweigh any differences in them.

145.    As a direct and proximate result of Defendants' breach of its implied warranties, Plaintiffs Williams, Overman, Chiariello and Oetegenn, and members

of the respective state Subclasses, have suffered damages and continue to suffer damages, including economic damages at the point of sale in terms of the difference between the value of the outboard motors as promised and the value of the outboard motors as delivered.  Additionally, they either have incurred or will incur economic damages in the form of cost of repair or replacement.

146.   Based on the facts alleged herein, any durational limitation to the express or implied warranties that would otherwise bar the warranty claims in this Count is procedurally and substantively unconscionable.

147.   Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims in this Count is tolled under equitable doctrines.

148.   Plaintiffs by and through their counsel notified Defendants in writing by certified mail of the particular violations which form the basis of this Count and demanded that Defendants rectify the problems for all affected consumers, including Plaintiffs Williams, Overman, Chiariello, Oetegenn and the members of the respective state Subclasses.  A copy of the letter is attached hereto as Exhibit C. Defendants did not respond to the letter.  In addition, Defendants were on notice of the defects from complaints and service requests it has received from Plaintiffs and other members of the Class, as well as through its own internal investigations as reported in the BoatUS article.

149.    Plaintiffs Williams, Overman, Chiariello and Oetegenn, and the members of the respective state Subclasses, are entitled to legal, injunctive and equitable relief against Defendants, including damages, injunctive relief including recall and replacement, restitution, attorneys' fees, costs and/or other relief as appropriate.

## COUNT IV

### VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT
#### California Civil Code § 1750, et seq.
#### (On Behalf of All Plaintiffs and the Class; Alternatively, on Behalf of Plaintiff Oetegenn and the California Subclass)

150.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

151.    Defendants' conduct that violated and continues to violate the CLRA, includes without limitation, the following:

iv.    Representing that their First Generation Four Stroke Outboard motors have characteristics, uses, and benefits which they do not have in violation of Section 1770(a)(5); and/or

v.    Representing that their First Generation Four Stroke Outboard motors are of a particular standard or quality, when they are of another, in violation of Section 1770(a)(7).

152.    Plaintiffs relied on Defendants' material misrepresentations that their First Generation Four Stroke Outboard motors were free from defects in material and workmanship.

153.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of the CLRA when Defendants failed to disclose and/or concealed material facts from Plaintiffs and the other members of the Class, namely, the defective design and/or manufacture of the First Generation Four Stroke Outboard motors, and that said outboard motors were likely to experience prematurely serious corrosion, with attending risks of engine failure and corresponding safety risks.

154.    The information Defendants failed to disclose was material.  Had Defendants disclosed the defective design and/or manufacture, and that they were subject to costly replacement and/or repair, consumers would have behaved differently, by either not purchasing the outboard motors in question, or insisting on paying less for them.  A reasonable consumer would not expect to have to undergo extremely expensive repair and replacement of corroded component parts after as few as 500 to 700 hours of use.

155.    Plaintiffs and all members of the Class, regardless of their state of residence, were harmed by Defendants' aforementioned unlawful business acts and practices occurring in the State of California (as well as in Japan).

156.    Pursuant to §1782 of the Act, Plaintiffs by and through their counsel notified Defendants in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of

Defendants' intent to so act.  A copy of the letter is attached hereto as Exhibit C. Defendants did not respond to the letter. In addition, Defendants were on notice of the defects from complaints and service requests it has received from Plaintiffs and other members of the Class, as well as through its own internal investigations as reported in the BoatUS article.

157.   Pursuant to §1780(d) of the Act, attached hereto as Exhibit D is the affidavit showing that this action has been commenced in the proper forum.

158.   Defendants failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice.

159.   Defendants' conduct is fraudulent, wanton and malicious.

160.   Accordingly, pursuant to Cal. Civ. Code §1782(a), Plaintiffs and the Class, and in the alternative Plaintiff Oetegenn and the California Subclass, seek in this Amended Complaint, in addition to equitable relief, actual, statutory and punitive damages as permitted under the CLRA and applicable law.

## COUNT V

**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(On Behalf of All Plaintiffs and the Class; Alternatively, on Behalf of**
**Plaintiff Oetegenn and the California Subclass)**

161.   Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

162.     Defendants' business acts and practices complained of were centered in, carried out, effectuated and perfected in Japan and within the State of California.   Defendants' business acts and practices complained emanated from Japan and from the State of California throughout the United States, and injured all Class members.

163.     Plaintiffs and all members of the Class, regardless of their state of residence, were harmed by Defendants' aforementioned unlawful business acts and practices occurring in the State of California (as well as in Japan).

164.     Beginning in at least 2000, Defendants committed acts of unfair competition, as defined by California Business and Professions Code, §§17200, et. seq., by engaging in the acts and practices specified above.

165.     This claim is instituted on behalf of Plaintiffs and the Class, and alternatively on behalf of Plaintiff Oetegenn and the California Subclass, to obtain equitable monetary and injunctive relief from Defendants for acts and practices, as alleged herein, that violated §17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

166.     Defendant engaged in "unlawful" business acts and practices by violating the Magnuson-Moss Warranty Act, 15 U.S.C. §§2301, et seq., by violating the Consumer Legal Remedies Act, California Civil Code §§1750, et seq., and by breaching implied warranties.

43

167.    Defendants engaged in "unfair" business acts and practices by, among other things, manufacturing and selling First Generation Four Stroke Outboards knowing or being aware they contained defects that cause early onset of severe corrosion within the commonly expected useful life of the motors.

168.    The acts and practices of Defendants have caused Plaintiffs and the Class members to lose money or property by being overcharged for and paying for the defective outboard motors at issue.  Such loss was the result of the above acts of unfair competition and Defendants' misconduct in violation of the laws set forth above.

169.    Defendants have been unjustly benefitted as a result of their wrongful conduct and their acts of unfair competition.  Plaintiffs and the Class members, and in the alternative, Plaintiff Oetegenn and the California Subclass, are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues and profits that may have been obtained by Defendants as a result of such business acts and practices, pursuant to California Business and Professions Code §§17203 and 17204.

## COUNT VI

### VIOLATION OF MASSACHUSETTS CONSUMER PROTECTION ACT
### (On behalf of the Massachusetts Subclass only)

170.    Plaintiff Charles Pencinger brings this cause of action against Defendants on behalf of himself and on behalf of the Massachusetts Subclass.

171.    Defendants' conduct as alleged herein caused substantial injury to consumers and constitutes unfair and deceptive acts or practices in the conduct of trade and commerce under the Massachusetts Consumer Protection Act, Massachusetts General Laws Annotated, Chapter 93A, Section 2.

172.    Defendants' conduct as alleged herein caused Pencinger and the Massachusetts Subclass to act differently than they would have otherwise acted. Absent Defendants' conduct, Pencinger and the members of the Massachusetts Subclass would either have not purchased the outboard motors in question, or would have insisted on paying less for them.

173.    Defendants' unfair and deceptive acts or practices have been both the but-for cause in fact, as well as the proximate cause of damage, to Pencinger and the Massachusetts Subclass members in an amount to be proven at trial.

174.    As a result of Defendants' conduct as alleged herein, Pencinger and the members of the Massachusetts Subclass suffered economic and financial injuries, losses and damages.

175.    Pencinger seeks and is entitled to an order enjoining Defendants from continuing to engage in the unfair and deceptive acts and practices alleged herein.

176.    Defendants' deceptive acts and practices as alleged herein were willful and knowing.

177.    Pencinger and the members of the Massachusetts Subclass should be awarded actual damages which should be doubled or trebled within the discretion of the Court.

178.    More than thirty (30) days before the filing of this Amended Complaint, a written demand for relief was sent by registered mail by Plaintiffs' counsel to Defendants, describing the unfair or deceptive acts or practices and the injuries suffered by a class of consumers nationwide who purchased First Generation Four Stroke Outboards, including Pencinger and other members of the Massachusetts Subclass.   This letter is attached as Exhibit C.   Defendants completely ignored Plaintiffs' written demand for relief.  In addition, Defendants were on notice of the defects from complaints and service requests it has received from Plaintiffs and other members of the Class, as well as through its own internal investigations as reported in the BoatUS article.

179.    Pursuant to Mass. Gen. Laws Chapter 93A §9, Pencinger and his counsel will seek reasonable attorneys' fees, to be awarded within the discretion of the Court.

## COUNT VII

**VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 349**
**(On behalf of the New York Subclass only)**

180.    Plaintiff Gerald Chiariello II brings this cause of action against Defendants for himself and on behalf of the New York Subclass.

181.   Chiariello is a resident of the State of New York and purchased his First Generation Four Stroke Outboard in the State of New York.

182.   Defendants' conduct as alleged herein was directed at consumers such as Chiariello and members of the New York Subclass, and was misleading in a material respect.

183.   Defendants' conduct as alleged herein constitutes deceptive acts or practices in the conduct of business, trade or commerce under N.Y. Gen. Bus. Law §349, et seq.

184.   As a direct and proximate result of Defendants' conduct as alleged herein, consumers such as Chiariello and the members of the New York Subclass suffered economic and financial losses and damages.

185.   The gravamen of the allegations against Defendants involves injury to consumers and harm to the public interest.

186.   Defendants' deceptive acts or practices would be likely to mislead a reasonable consumer acting reasonably under the circumstances.

187.   Defendants' deceptive acts and practices as alleged herein were willful and knowing.

188.   Chiariello and the members of the New York Subclass are entitled to injunctive relief and should be awarded actual damages which should be trebled within the discretion of the Court.

189.    Pursuant to N.Y. Gen. Bus. Law §349(h), Chiariello and his counsel will seek reasonable attorneys' fees, to be awarded within the discretion of the Court.

## COUNT VIII

### VIOLATION OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### (On behalf of the North Carolina Subclass only)

190.    Plaintiff Lucinda Overman brings this cause of action against Defendants for herself and on behalf of the North Carolina Subclass.

191.    Defendants' misrepresentations and omissions as alleged herein constitute unfair and deceptive trade practices under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1.1, et seq.

192.    Plaintiff Overman relied on Defendants' material misrepresentations and omissions that stated their First Generation Four Stroke Outboard motors were free from defects in material and workmanship, and concealed the defects.

193.    Defendants' actions in question affected commerce in the State of North Carolina.

194.    Defendants' unfair and deceptive trade practices have been a proximate cause of damage to Overman and the North Carolina Subclass members in an amount to be proven at trial.

195.    As a result of Defendants' unfair and/or deceptive business practices, Overman and all members of the North Carolina Subclass have lost money in that

they paid for products that did not have the benefit as represented.  Overman seeks and is entitled to an order enjoining Defendants from continuing to engage in the unfair and deceptive business practices alleged herein.

196.    Overman and members of the North Carolina Subclass should be awarded damages, which should be trebled pursuant to N.C. Gen. Stat. §75-16. Overman and her counsel will seek reasonable attorneys' fees pursuant to N.C. Gen. Stat. §75-16.1.

## COUNT IX

**VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT**
**(On behalf of the Washington Subclass only)**

197.    Plaintiff George Williams brings this cause of action against Defendants for himself and on behalf of the Washington Subclass.

198.    Defendants' conduct as alleged herein deceived Plaintiff Williams and has the capacity to deceive a substantial portion of the public.

199.    Defendants' conduct as alleged herein constitutes unfair and deceptive acts and practices in violation of Wash. Rev. Code §19.86.010, et. seq.

200.    Defendants' unlawful acts and practices proximately caused damage to Williams and the Washington Subclass members in an amount to be proven at trial.

201.    As a result of Defendants' unfair and/or deceptive business practices, Williams and all members of the Washington Subclass have lost money in that

they paid for products that did not have the benefit as represented.  Williams seeks and is entitled to an order enjoining Defendants from continuing to engage in the unfair and deceptive business practices alleged herein.

202.    Damages awarded to Plaintiff and members of the Subclass should be trebled pursuant to Wash. Rev. Code. §19.86.090, and include interest pursuant to Wash. Rev. Code §19.86.909.  Williams is entitled to recover a reasonable sum for the necessary services of Plaintiff's attorneys in preparation and trial of this action pursuant to Wash. Rev. Code §19.86.090.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

a.    Certification of this case as a class action and certification of Plaintiffs herein to be adequate Class representatives and their counsel to be class counsel;

b.    The granting of injunctive relief including but not limited to a recall or free replacement program, or rescission;

c.    An award of costs, restitution, damages and disgorgement in an amount to be determined at trial;

d.    An award of costs and attorneys' fees; and

e.    The granting of such other and further relief as this Court finds necessary and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

DATED:  September 5, 2013

BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.

MANFRED P. MUECKE (222893)
mmueke@bffb.com
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone:  (619) 756-7748

VAN BUNCH
*(Admitted Pro Hac Vice)*
vbunch@bffb.com
T. BRENT JORDAN
*(Admitted Pro Hac Vice)*
bjordan@bffb.com
BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.
2325 E. Camelback Road, #300
Phoenix, AZ  85016
Telephone:  (602) 274-1100
Fax:   (602) 274-1199

DEBRA BREWER HAYES
(*Admitted Pro Hac Vice*)
dhayes@dhayeslaw.com
REICH & BINSTOCK, LLC
4265 San Felipe, Suite 1000
Houston, TX  77027
Telephone: (713) 622-7271
Fax: (713) 623-8724

STEPHEN M. HANSEN
(*To be Admitted Pro Hac Vice*)
LAW OFFICES OF STEPHEN M.
HANSEN
1821 Dock St., Unit 103
Tacoma, WA  98402
Telephone: (253) 302-5955

51

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JEFFREY WESTERMAN
Bar No. 94559
WESTERMAN LAW CORP.
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 698-7880
Fax: (310) 201-9160

Attorneys for Plaintiff

# EXHIBIT A



2004 owners manual F225.pdf (SECURED) - Adobe Acrobat Pro

YAMAHA

F200C
LF200C
F225C
LF225C

OWNER'S MANUAL

U.S.A.Edition
LIT-18626-05-32

EMU31404

# YAMAHA MOTOR CORPORATION, U.S.A. FOUR-STROKE OUTBOARD MOTOR THREE-YEAR LIMITED WARRANTY

Yamaha Motor Corporation, U.S.A. hereby warrants that new Yamaha 1999-or-later model four-stroke outboard motors originally distributed by Yamaha Motor Corporation, U.S.A. will be free from defects in material and workmanship for the period of time stated herein, subject to certain stated limitations. Warranty coverage for outboards distributed by non-US Yamaha affiliated companies may be different.

**PERIOD OF WARRANTY.** Any new Yamaha 1999-or-later model four-stroke outboard motor purchased and registered with Yamaha Motor Corporation, U.S.A. for pleasure use in the United States, will be warranted against defects in material or workmanship for a period of three (3) years from the date of purchase, subject to exclusions noted herein. Any Yamaha outboard motor purchased and utilized for commercial applications will be warranted for a period of one (1) year from the date of purchase, subject to exclusions noted herein. Yamaha peripheral equipment included with the motor such as gauges, fuel tanks, and hoses, remote control boxes, and wiring external from the motor unit, will be warranted for one (1) year from the date of purchase of either pleasure or commercial use. Replacement parts used in warranty repairs will be warranted for the balance of the applicable warranty period.

The second and third year of warranty (if applicable) shall be limited to covering the cost of parts and labor for major components only. The major components covered are:

**Power Unit Section**
- Power Head
- Intake Manifold
- Carburetor Assembly and its Related Components
- Fuel Injection System and its Related Components
- Fuel and Oil Pump Assemblies
- Ignition System (Standard and Microcomputer)

**Lower Unit Section**
- Exhaust System
- Upper Casing
- Lower Unit Assembly

**Bracket Section**
- Bracket System
- Power Trim and Tilt Assembly

**WARRANTY REGISTRATION.** To be eligible for warranty coverage, the outboard motor must be registered with Yamaha Motor Corporation, U.S.A. Warranty registration can be accomplished by any authorized Yamaha Outboard Motor Dealer. Upon receipt of the registration, an Owner's Warranty Card will be sent by Yamaha to the registered purchaser.

**OBTAINING REPAIRS UNDER WARRANTY.** To receive repairs under this warranty, a valid Owner's Warranty Card must be presented to an authorized Yamaha Outboard Motor Dealer.

During the period of warranty, any authorized Yamaha outboard dealer will, free of charge, repair or replace, at Yamaha's option, any parts adjudged defective by Yamaha due to faulty workmanship or material from the factory. All replaced parts will become the property of Yamaha Motor Corporation, U.S.A.

**CUSTOMER'S RESPONSIBILITY.** Under the terms of this warranty, the customer will be responsible for ensuring that the outboard motor is properly operated, maintained, and stored as specified in the applicable Owners Manual.

The owner of this outboard motor shall give notice to an authorized Yamaha Outboard Motor Dealer of any and all apparent defects within ten (10) days of discovery and make the motor available at that time for inspection and repairs at the dealers place of business.

**GENERAL EXCLUSIONS FROM WARRANTY.** This warranty will not cover the repair of damage if the damage is a result of abuse or neglect of the product. Examples of abuse and neglect include, but are not limited to:

1. Racing or competition use, modification of original parts, abnormal strain.
2. Lack of proper maintenance and off-season storage as described in the Owner's Manual, installation of parts or accessories that are not equivalent in design and quality genuine Yamaha parts.
3. Operation of the motor at an rpm other than specified, use of lubricants or oils that are not suitable for outboard motor use.
4. Damage as a result of accidents, collisions, contact with foreign materials, or submersion.
5. Growth of marine organism on motor surfaces.
6. Normal deterioration.



**SPECIFIC PARTS EXCLUDED FROM WARRANTY.** Parts replaced due to normal wear or routine maintenance such as oil, spark plugs, shear pins, propellers, hubs, fuel and oil filters, brushes for the starter motor and power tilt motor, water pump impellers, and anodes, are not covered by warranty.

Charges for removal of the motor from a boat and transporting the motor to and from an authorized Yamaha Outboard Motor Dealer are excluded from warranty coverage.
Specific parts excluded from the second and third year of warranty (if applicable) are:
● Top and Bottom Cowling
● Electric Components (other than ignition system)
● Rubber Components (such as hoses, tubes, rubber seals, fittings, and clamps)

**TRANSFER OF WARRANTY.** Transfer of the warranty from the original purchaser to any subsequent purchaser is possible by having the motor inspected by an authorized Yamaha Outboard Motor Dealer and requesting the dealer to submit a change of registration to Yamaha Motor Corporation, U.S.A. within ten (10) days of the transfer.

*YAMAHA MOTOR CORPORATION, U.S.A. MAKES NO OTHER WARRANTY OF ANY KIND, EXPRESSED OR IMPLIED. ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WHICH EXCEED THE OBLIGA-TIONS AND TIME LIMITS STATED IN THIS WARRANTY ARE HEREBY DISCLAIMED BY YAMAHA MOTOR CORPORATION, U.S.A. AND EXCLUDED FROM THIS WARRANTY.*

*SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU. ALSO EXCLUDED FROM THIS WARRANTY ARE ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING LOSS OF USE. SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUEN-TIAL DAMAGES, SO THE ABOVE EXCLUSION MAY NOT APPLY TO YOU.*

*THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.*

YAMAHA MOTOR CORPORATION, U.S.A.
Post Office Box 6555
Cypress, California 90630



# EXHIBIT B

# JACOBSEN'S MARINE

## WE APPRECIATE YOUR BUSINESS
2625 HARBOR AVE. S.W.     SEATTLE, WA  98126     (206)-789-7474

**WORK ORDER 18390**          **Invoice 108481**     **Reprint**
11/15/2011                              **18390**                              15:10:10

14439                          **Year/Make:** 03 192 GRADY WHITE
WILLIAMS,GEORGE                   **Model:** F200HP YMAAHA **Loa:**  19
3303 NW 72ND                  **CG Number:** WN3149RN      **Hrs:** 688
SEATTLE, WA 98117-            **Serial No:** NTLBC498F303
                              **Vessel:** PLATE #3604RG
  -    -    WK#206-276-8022      **Warr:**  /  /

---

**INVOICE FOR WORK PERFORMED FOR BOAT/VESSEL PLATE #3604RG & OWNERS**

SERVICE ENGINE
CUSTOMER HIT LOG, LOOK AT LOWER UNIT
WHEN TILTING MOTOR UP, HOSES AND WIRES LOOK LIKE THAY ARE GETTING PULLED
STEERING LEAK IN SPLASH WELL, CHEAK SEALS

| 1 | : 1 | : **TUNE AND LUBE** | **(T/M)** |

CHECKED COMPRESION, 190 LBS ALL CYLINDERS. INSTALLED NEW
SPARK PLUGS.  CHANGED MOTOR OIL AND FILTER.  REPLACED
POWERHEAD INTERNAL ANODES.  CHANGED FUEL WATER SEPARATOR
FILTER.  CHANGED ENGINE FUEL FILTER.  INSPECTED TIMING BELT,
OK.  CHANGED TRANSOM BRACKET ANODE.  CHECKED TNT FLUIDE, OK.
CHANGED GEAR OIL AND LUBED.  GREASED AND INSPECTED PORPSHAFT.
CHANGED GEARCASE TRIM TAB ANODE.  STARTED AND RAN MOTOR IN
TANK.  CHECKED WATER PUMP AND THERMOSTAT OPERATION, GOOD.
CHECKED SHIFT AND THROTTLE, GOOD.  MOTOR STARTED AND RAN GOOD.

| Part Number | Description | Bin | Qty | Price | Ext Price |
|---|---|---|---|---|---|
| 69J-13440-01-00 | ELEMENT ASSY, OIL C | | 1 | 27.20 | 27.20 |
| Y10W30 | 10W30  YAMAHA 10W30 | | 6 | 4.85 | 29.10 |
| LFR5A-11-00 | NGK SPK/PLUG | | 6 | 5.95 | 35.70 |
| 67F-11328-00-00 | GROMMET, ANODE | | 4 | 1.20 | 4.80 |
| 68V-11325-01-00 | ANODE | | 4 | 21.55 | 86.20 |
| 65L-24563-00-00 | ELEMENT, FUEL FILTE | | 1 | 19.50 | 19.50 |
| MAR-FUELF-IL-TR | FUEL/WATER FILTER - | | 1 | 24.50 | 24.50 |
| 6G5-45251-02-00 | ANODE | | 1 | 24.95 | 24.95 |
| 90430-08020-00 | GASKET A LOWER GEAR | | 2 | 1.00 | 2.00 |
| LUBE | LUBE OUTBOARD | | 1 | 12.50 | 12.50 |
| 61A-45371-00-00 | TRIM-TAB A | | 1 | 26.80 | 26.80 |
| 314502 | COTTER PIN 10 PK | | 1 | 0.70 | 0.70 |
| | | | | **Material:** | **293.95** |

| Date | | Description | Hours | Price |
|---|---|---|---|---|
| 10/19/2011 | 203 | Labor JMS | 3.00 | 375.00 |
| | | | **Labor:** | **375.00** |
| | | | **Subtotal:** | **$668.95** |

| 2 | : 2 | : **OIL LEAK** | **(T/M)** |

FOUND NO OIL LEAK ON STEERING.  CHECKED MOTOR,  OIL PUMP
LEAKING OIL.

```
WORK ORDER 18390          Invoice 108481    Reprint  Page 2
11/15/2011                     18390
                                                           15:10:10
```

```
       REMOVED POWERHEAD.  CHANGED OIL PUMP ASSY.  INSTALLED
       CRANKSHAFT SLEEVE ON CRANKSHAFT.
```

| Part Number | Description | Bin | Qty | Price | Ext Price |
|---|---|---|---|---|---|
| MAR-CRKSL-VE-00 | CRANK REPAIR SLEEVE | | 1 | 44.00 | 44.00 |
| 93210-25552-00 | O-RING | | 2 | 5.05 | 10.10 |
| 69J-11351-01-00 | GASKET, CYLINDER | | 1 | 21.95 | 21.95 |
| 69J-11355-00-00 | SEAL, CYLINDER 1 | | 1 | 17.00 | 17.00 |
| 69J-13300-01-00 | OIL PUMP ASSY | | 1 | 300.00 | 300.00 |
| | | | | Material: | 393.05 |

| Date | | Description | Hours | Price |
|---|---|---|---|---|
| 11/08/2011 | 203 | Labor JMS | 5.50 | 687.50 |
| | | | Labor: | 687.50 |
| | | | Subtotal: | $1080.55 |

```
  3      3         MID SECTION                    (T/M)
       FOUND CORROSION ON OIL PAN AND EXHAUST PARTS.  REMOVED
       GEARCASE AND DISASSEMBLED EXHAUST HSG COMPLETE.  REPLACED ALL
       CORRODED PARTS.  ASSEMBLED EXHAUST HSG AND INSTALLED GEARCASE.
       INSTALLED POWERHEAD ASSY.  STARTED AND RAN MOTOR IN TANK.
       CHECKED OPERATION, GOOD.  INSPECTED FOR LEAKS OF OIL, WATER OR
       FUEL, NONE.
```

| Part Number | Description | Bin | Qty | Price | Ext Price |
|---|---|---|---|---|---|
| 69J-41134-A0-00 | GASKET, EXHAUST MAN | | 1 | 1.80 | 1.80 |
| 69J-41138-00-00 | SEAL, EXT. 1 | | 1 | 1.40 | 1.40 |
| 69J-45123-00-00 | GASKET, MUFFLER | | 1 | 2.05 | 2.05 |
| 69J-13411-00-00 | STRAINER, OIL | | 1 | 11.35 | 11.35 |
| 69J-14711-00-9S | MUFFLER 1 | | 1 | 45.70 | 45.70 |
| 69J-15311-10-CA | OIL PAN | | 1 | 122.30 | 122.30 |
| 69J-15312-01-00 | GASKET, OIL PAN | | 1 | 10.70 | 10.70 |
| 69J-41135-A0-00 | GASKET, EXHAUST MAN | | 1 | 5.00 | 5.00 |
| 69J-45127-00-00 | SEAL | | 1 | 1.00 | 1.00 |
| 69J-45181-10-9S | PLATE | | 1 | 25.30 | 25.30 |
| 6S1-41136-00-00 | GASKET, EXHAUST MAN | | 1 | 4.75 | 4.75 |
| 99999-03928-00 | MANIFOLD, EXT. 1 | | 1 | 102.50 | 102.50 |
| 69J-13415-00-00 | SEAL, OIL STRAINER | | 1 | 10.40 | 10.40 |
| 69J-41137-02-CA | GUIDE, EXHAUST | | 1 | 166.30 | 166.30 |
| 69J-45113-00-00 | GASKET, UPPER CASIN | | 1 | 12.95 | 12.95 |
| 99999-03568-00 | MANIFOLD, EXHAUST | | 1 | 40.10 | 40.10 |
| | | | | Material: | 563.60 |

| Date | | Description | Hours | Price |
|---|---|---|---|---|
| 11/08/2011 | 203 | Labor JMS | 3.50 | 437.50 |
| | | | Labor: | 437.50 |
| | | | Subtotal: | $1001.10 |

```
Date Brought In: 10/17/2011         Total Material:    $1250.60
Date Promised  : 10/24/2011           Total Labor:     $1500.00
Date Completed : 11/08/2011         9.500% Tax:          $261.31
                                      Total Amount:    $3011.91
```

# EXHIBIT C



**BONNETT FAIRBOURN**
**FRIEDMAN & BALINT PC**

JERRY C. BONNETT
FRANCIS J. BALINT, JR.
C. KEVIN DYKSTRA
ANDREW Q. EVERROAD
JONATHAN S. WALLACK
CHRISTINA L. BANNON
WILLIAM F. KING
ANDREW M. EVANS
KEVIN R. HANGER

WILLIAM G. FAIRBOURN
VAN BUNCH
ELAINE A. RYAN
KATHRYN A. HONECKER
GUY A. HANSON
MANFRED P. MUECKE[1]
TONNA K. FARRAR[2]
TY D. FRANKEL
ERIC D. ZARD

ANDREW S. FRIEDMAN
ROBERT J. SPURLOCK
WENDY J. HARRISON
PATRICIA N. SYVERSON
KIMBERLY C. PAGE
TODD D. CARPENTER[1]
T. BRENT JORDAN[3]
LINDSEY M. GOMEZ

MICHAEL N. WIDENER, Of Counsel

[1] Admitted Only In California
[2] Admitted Only In California, Missouri
and Kansas
[3] Admitted Only in Pennsylvania

July 15, 2013

**VIA REGISTERED MAIL (RETURN RECEIPT)**
Yamaha Motor Co. Ltd.
2500, Shingai, Iwata
Shizuoka 438-8501
Japan

**VIA CERTIFIED MAIL (RETURN RECEIPT)**
**(RECEIPT NO. 7012 3460 0000 7080 8271)**
Yamaha Motor Corporation, USA
6555 Katella Avenue
Cypress, CA 90630

Re:   Williams v. Yamaha Motor Co. Ltd, et al.

Dear Sirs or Madams:

Our law firm represents George Williams and all other similarly situated consumers in an action against Yamaha Motor Co., Ltd., and Yamaha Motor Corporation USA ("Yamaha"), requesting certification of a class, and arising out of an inherent design and/or manufacturing defect in Yamaha's first generation, four stroke outboard motors that caused an almost immediate onset of corrosion to internal component parts.

The corrosion buildup forced owners such as Mr. Williams to undergo significant repair or replacement of the internal corroded parts, even if the engines were properly maintained. Due to the concealed placement of the internal component parts experiencing corrosion, Mr. Williams and similarly situated owners could not have seen the defect prior to the advancement of the corrosion to the stage where performance related symptoms surfaced.

Based on the inherent defects in the design and/or manufacture of the first generation, four stroke outboards, Yamaha knew or should have known that Yamaha Motor Corporation USA's warranties were being breached and that in order to keep the outboards in operation past the warranty period, owners were incurring unexpected labor and materials costs. However, Yamaha concealed the defect from consumers, failed to warn of the potential safety risk of engine failure associated with the defect, and failed to issue a service bulletin or a general recall.

The full claims, including the facts and circumstances surrounding these claims, are detailed in the Class Action Complaint seeking equitable and injunctive relief on behalf of Mr.

Williams and the members of a Class of similarly situated owners, a copy of which is enclosed and incorporated by this reference.

Yamaha's failures described above violate California Civil Code §1770(a) under, *inter alia,* the following subdivisions:

> (5)    Representing that [the outboard motors] have . . . characteristics, . . . uses [or] benefits. . . which [they do] not have.

* * *

> (7)    Representing that [the outboard motors] of a particular standard, quality or grade, . . . if [it is] of another.

See California Civil Code §1770(a).

Yamaha's practices also constitute violations of California Business and Professions Code §17200, *et seq.,* the Magnuson-Moss Warranty Act, state express warranties, and state implied warranties.

While the Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code §1782, we hereby demand on behalf of our client and all others similarly situated that Yamaha immediately correct and rectify this violation of California Civil Code §1770 by conducting a service bulletin or general recall of the defective outboard motors, and offering restitution of repair and replacement costs to all members of the proposed class.

Mr. Williams will, after 30 days from the date of this letter, amend the Complaint pursuant to California Civil Code §1782(d) to include requests for actual damages, punitive damages, attorneys' fees, and costs if a full and adequate response to this letter is not received.

We await your response.

Very truly yours,

Van Bunch, Esq.
T. Brent Jordan, Esq.

Enclosures

# EXHIBIT D

MANFRED P. MUECKE (222893)
mmueke@bffb.com
BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone:  (619) 756-7748
Fax: (602) 274-1199

VAN BUNCH
(*To be Admitted Pro Hac Vice*)
vbunch@bffb.com
T. BRENT JORDAN
(*To be Admitted Pro Hac Vice*)
bjordan@bffb.com
BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.
2325 E. Camelback Road, #300
Phoenix, AZ  85016
Telephone:  (602) 274-1100
Fax:  (602) 274-1199

Attorneys for Plaintiff

DEBRA BREWER HAYES
(*To be Admitted Pro Hac Vice*)
dhayes@dhayeslaw.com
CHARLES CLINTON HUNTER
(CA Bar No. 93987)
chunter@rbfirm.net
REICH & BINSTOCK, LLC
4265 San Felipe, Suite 1000
Houston, TX  77027
Telephone: (713) 622-7271
Fax: (713) 623-8724

STEPHEN M. HANSEN
(*To be Admitted Pro Hac Vice*)
LAW OFFICES OF STEPHEN M. HANSEN
1821 Dock St., Unit 103
Tacoma, WA  98402
Telephone: (253) 302-5955

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE WILLIAMS, on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>YAMAHA MOTOR CO., LTD. and YAMAHA MOTOR CORPORATION, U.S.A.,<br><br>          Defendants. | Case No.:<br><br>**DECLARATION OF MANFRED P. MUECKE PURSUANT TO CALIFORNIA CIVIL CODE §1780(d)** |

I, Manfred P. Muecke, declare as follows:

1.     I am an attorney with the law firm of Bonnett, Fairbourn, Friedman & Balint,  P.C., counsel of record for Plaintiff in the above-entitled action.  I am admitted to practice in this Court.

- 1 -

2.    Defendant Yamaha Motor Co. Ltd. has done and is doing business in the Central District of California.   Such business includes the marketing, distributing and sale of First Generation Four Stroke Outboards as defined in Plaintiff's Class Action Complaint.

3.    Defendant Yamaha Motor Corporation, U.S.A. is a corporation organized and existing under the laws of the State of California and has its principal place of business in the Central District of California, at 6555 Katella Avenue, Cypress, California 90630.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 15th day of July 2013, at San Diego, California.

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.

MANFRED P. MUECKE (222893)
mmuecke@bffb.com
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone: (619) 756-7748
Fax: (602) 274-1199

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2013, I filed the foregoing with the Clerk of the Court and I hereby certify that I have mailed the foregoing document via the United States Postal Service to the following:

>Theodore J. Boutros, Jr.
>Theane Evangelis Kapur
>Timothy W. Loose
>GIBSON, DUNN & CRUTCHER, LLP
>333 South Grand Avenue
>Los Angeles, CA  90071
>
>*Attorneys for Defendant Yamaha Motor Corp., U.S.A.*

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 5, 2013.

By:_____
MANFRED P. MUECKE
BONNETT FAIRBOURN FRIEDMAN
  & BALINT, PC
2325 E. Camelback Road, Ste. 300
Phoenix, AZ  85016
Tel: 602-274-1100

53